## MONROE GUNNELLS v. STATE.

No. A-759.   Opinion Filed March 26, 1912.

(122 Pac. 264.)

1.   **LARCENY—Evidence.**  In a prosecution for larceny of live stock, the evidence is held to support the verdict, and that no reversible error was committed on the trial.

2.   **INDICTMENT AND INFORMATION—Verification.**  The verification of an information charging a felony is no part of the information itself, and is not an indispensable requisite.

3.   **TRIAL—Reading Evidence to Jury.**  As section 6865 (Comp. Laws 1909) of Procedure Criminal requires only the presence of the defendant and the calling of counsel, where there is a disagreement between jurors as to any part of the testimony, and the jury request that such testimony be read, it was not error for the court to direct the reporter to read such testimony in the absence of the defendant's counsel; he having been duly called, and the defendant being present in person.

4.   **SAME—Argument of Prosecuting Attorney.**  Where the prosecuting attorney in closing the case makes the statement, "The perjury was so plain that the court called me to his bench and called my attention to same," he is guilty of misconduct, as the jurors are the sole judges of the credibility of the witnesses who testify before them, and not the court.  But where the court, upon objection made, immediately instructs the jury that such is not the case, and directs the jury to disregard such statement, it is not prejudicial error.

(Syllabus by the Court.)

*Appeal from District Court, Coal County;*
*A. T. West, Judge.*

Monroe Gunnells was convicted of larceny, and appeals.  Affirmed.

*G. T. Ralls,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen., for the State.

DOYLE, J.  Monroe Gunnells, plaintiff in error, was tried, convicted, and sentenced to imprisonment for one year in the

state prison in pursuance of a verdict returned upon his trial on an information which charged the larceny of three head of cattle, the personal property of one Crockett Gray.

The proof on the part of the prosecution tends to show the following facts:

Crockett Gray was a farmer living near the boundary line of Pontotoc and Coal counties, and was the owner of three head of cattle, which were kept by one Dunn on his ranch near the town of Oconee, about three miles from Gray's home. The defendant lived with his father-in-law, Sam Whiteside, which was a mile or two from Dunn's pasture. On the morning of April 27, 1909, the defendant left the home of his father-in-law on horseback ostensibly to get some cane seed from a man named Carr, who lived about half a mile from Dunn's pasture. He reached Carr's early in the afternoon and got the cane seed and left with it.

Lon Craft, the only witness who testified directly to the larceny of the cattle, lived about a quarter of a mile from Carr's, and about the same distance from Dunn's pasture. He testified that the defendant came to his house on that day, along in the afternoon, and that his brother, Tom Craft, was there; that the defendant stayed there nearly all the afternoon, and along about dark offered Tom Craft a dollar to go with him to Dunn's pasture and get some cattle that the defendant said belonged to his father-in-law, Sam Whiteside; that the defendant and Lon Craft went over to Dunn's pasture and drove out three head of cattle, which were afterwards identified as the stolen cattle.

The cattle were driven by the defendant, with the assistance of Tom Craft, to a pasture on his father-in-law's place, where they were marked and branded and kept for a few days, and then transferred to the pasture of one Howard, which pasture was larger and had more timber in it than the Whiteside pasture, which was a small pasture close to the road, where an entire view could be had from the road. The cattle were kept in the Howard pasture for a week or two, when they were sold by the defendant to Dunk McMillan for $31. The cattle were then taken to the

McMillan pasture, seven or eight miles from the home of Crockett Gray, the owner of the cattle. When the cattle were missed from Dunn's pasture, search was made for them, and they were found in McMillan's pasture.

.The defendant offered testimony tending to show that he purchased the cattle from a man whose name he did not know, who at the time was driving the cattle along the highway. According to the defendant's own testimony, he did not ask the man where he lived, or what was his name, or where he got the cattle. He testified that Tom and Lon Craft were present when he bought the cattle. The testimony of his brother-in-law and one or two other witnesses was offered to corroborate the fact that he was accompanied by three other men, when driving the cattle along the highway on the day charged.

We have considered the record in its most favorable light to the defendant, but find no error upon which a new trial should be granted. Clearly the evidence is sufficient to sustain the conviction.

The first error assigned, that "the court erred in permitting the county attorney to amend the information by adding thereto verification of Crockett Gray," is without merit. *Henson v. State,* 5 Okla. Cr. 201, 114 Pac. 630.

The second assignment is that there was error committed in the argument of the case by the county attorney. By stipulation of counsel, it is shown that the county attorney, in his closing argument, stated:

"Gentlemen of the jury, there has been a great deal of perjured testimony offered by the defendant in this case. Why, the perjury was so plain that the court called me to his bench and called my attention to same."

It is further agreed that the defendant objected to the statement of the county attorney and asked the court to instruct the jury not to consider that statement, and that the court did so instruct the jury. It does not appear that this stipulation was submitted to the trial court as a part of the original case-made; for this reason, the question raised is not properly before this court. We think, however, considering the contention as pre-

sented, that the misconduct of the county attorney in basing an argument on what the court might have said regarding the credibility of a witness does not constitute reversible error, in view of the instruction of the court to the jury not to consider such statement. In the absence from the record of the proceedings had, the presumption is that the misconduct was properly rebuked, and the jury directed to disregard the prejudicial statement.

It is further contended that the court erred in permitting the court reporter to read the testimony of three witnesses in the absence of the defendant's attorney. It appears from the record that the jury returned into court and asked to have this testimony read. The record shows that Mr. Ralls, the attorney for the defendant, was called, and that the court waited upon him a reasonable length of time, and that he did not appear. The defendant being present, Mr. Humphreys, an attorney at law, agreed to act in the absence of Mr. Ralls, and to save all possible exceptions for him. The court then directed the reporter to read the testimony in question. During the reading of this testimony, Mr. Ralls appeared and excepted to the action of the court in permitting any testimony to be read in his absence. The alleged error is based upon the theory that it was the duty of the court to wait until the attorney for the defendant appeared, no matter how long that might be. Such is not the law. Section 6865, Comp. Laws 1909, provides:

"After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony or if they desire to be informed on a point of law arising in the cause, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to the county attorney and the defendant or his counsel, or after they have been called."

This information was given in the presence of the defendant, after his counsel had been called. There is nothing in the record to show that the defendant was in any way prejudiced by the

failure of his counsel to be present during the entire proceedings of the court.

This covers all assignments of error, and results in the conclusion that the defendant was properly convicted, and that the record presents no reversible error.

The judgment of the district court of Coal county is therefore affirmed.

FURMAN, P. J., and ARMSTRONG, J., concur.