## C. L. FOSTER v. STATE.

No. A-4232.    Opinion Filed Oct. 13, 1923.

(218 Pac. 898.)

(Syllabus.)

1.    **Trial—Improper Comment on Inadvertently Admitted Incompetent Evidence.** Where incompetent evidence has been inadvertently admitted, and the court subsequently admonishes the jury not to consider it, the county attorney should not comment upon such testimony in his argument to the jury.

2.    **Evidence—Evidence Procured by Unauthorized Search.** Evidence procured by an officer of the court by means of an unauthorized search and seizure should not be received, where timely objection is made to its introduction.

Appeal from County Court, Comanche County; P. G. Fullerton, Judge.

C. L. Foster was convicted of unlawfully transporting intoxicating liquors, and he appeals. Reversed.

J. S. Rhinefort, for plaintiff in error.

The Attorney General and N. W. Gore, Asst. Atty. Gen., for the State.

BESSEY, J.  C. L. Foster, plaintiff in error, here designated the defendant, was convicted of illegally transporting intoxicating liquor and his punishment was fixed at a fine of $100 and confinement in the county jail for a period of 30 days. From the judgment rendered on this verdict he appeals.

There was but one witness for the state, W. X. Smith, a deputy sheriff, who, while driving along the streets of Lawton, saw the defendant coming out of an alley carrying a suit case. The deputy sheriff stopped his car and told the defendant he wanted to see what was in the suit case. The defendant placed the suit case in the back seat of the car, where, with some difficulty, the deputy forced the suit case

open and found therein two one-gallon glass jars of whisky. The suit case and the whisky were retained by the officer and the defendant taken to jail.

The defendant claimed that he found this suit case in or near this alley 10 or 15 feet from a building where he had gone to visit a sick relative, that the suit case was locked, and that at that time he knew nothing about its contents. The story, in its details, seems somewhat improbable, although it was corroborated by an apparently disinterested witness, who testified that, while hanging clothes on a line to dry, near where the suit case was found, he saw and talked with the defendant about it, and saw him take it away. None of the witnesses were impeached, nor their characters successfully assailed.

The county attorney, in his address to the jury, among other things said:

"I recall, gentlemen of the jury, that this defendant was asked as to his vocation to test his credibility as a witness; that he testified that he had been running the Sherman rooms. And I recall that there was no further testimony introduced relative to himself or the Sherman rooms; that the character and good reputation wass not placed at issue, by the defendant, and was not gone into by the state."

The record elsewhere disclosed that upon an investigation made by the court, out of the hearing of the jury, the testimony concerning the Sherman rooming house was excluded from the jury. Under the circumstances it was hardly fair for the county attorney to comment upon this evidence which had been excluded. Often it is difficult for jurors to divest their minds of damaging testimony excluded by the court, and for counsel to make comments upon such excluded testimony may cause the jury to give it considera-

tion despite the warning of the court. Such comment amounts to more than an argument to the jury concerning things not in the record, being a comment upon matters specifically excluded by the court. This we think was unfair to the defendant.

The primary purpose of the officer when he first detained the defendant was to ascertain what was in the suit case, and for that purpose he forcibly made a search, and did so without a search warrant. The defendant here was not really arrested until after the suit case was searched. The search was made upon suspicion merely, and without a search warrant. We base this conclusion on the deputy sheriff's own testimony, quoting from the record:

"A. Well, I was in the car, and I saw him while coming up D, and I just turned around the corner of Second, and pulled up the car just ahead of him, and as he came along, before I could get out of the car, I told him I wanted to see what he had in that grip, and he set it over in the back seat. * * * A. I just spoke to him, and said, 'Foster, I will have to see what you've got in the grip.' I believe that is the way I said it to him."

The introduction of the evidence of the whisky and containers, over the timely objections of the accused, they being evidence procured by an illegal and unauthorized search and seizure, was error, as recently decided by this court in the case of Gore v. State, 24 Okla. Cr. 394, 218 Pac. 545, to which reference is made for the reasons and authorities supporting this conclusion.

The judgment of the trial court is reversed.

MATSON, P. J., and DOYLE, J., concur.