# CAMP v. STATE.

No. A-11302. Jan. 9, 1952.

(239 P. 2d 1036.)

Rehearing Denied Feb. 21, 1952.

John L. Ward, Jr., Tulsa, and Matt S. Simms, Sand Springs, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, P. J. The plaintiff in error, John Camp, defendant below, was charged by information in the district court of Tulsa county, Oklahoma, with the crime of murder. In the information it is alleged that on the 28th day of November, 1948, the defendant shot and killed Claude Lynch, a policeman, about 7:30 p.m., on said day at or near Latimer and Greenwood streets in Tulsa, Oklahoma. The defendant was tried by a jury, convicted of first degree manslaughter, his punishment fixed at 4 years in the penitentiary and judgment and sentence entered accordingly. From said judgment and sentence, this appeal has been perfected.

This appeal was lodged herein on September 14, 1949, but the delay in disposing of the same has been due to the delay of counsel both for the defendant and the state in filing their briefs. The case being one that involved a charge of murder we did not wish to consider the same without ample briefs. Notwithstanding the court has repeatedly urged completion of this appeal, the defendant filed his brief herein on November 29, 1950, and the state's brief was not prepared and filed until December 4, 1951. Possibly some of the delay may be laid to the size of the record which contains 682 pages. Nevertheless we have carefully examined the briefs and record in less than 30 days. Such delay we do not countenance and would not have permitted but for the gravity of the charge against the defendant.

An extended relation of the evidence is not necessary for a consideration of this appeal. The record shows that Officers Claude Lynch and Henry Johnson in response to a police radio dispatch went to the defendant John Camp's home located at 523 King street in Tulsa. When they arrived there they found the defendant seated in his auto parked on the driveway. The state's evidence discloses as the officers approached the defendant had his automatic shotgun lying across his lap. When they came close to the car, Camp pointed the gun at Officer Lynch and Officer Johnson grabbed the gun and placed Camp under arrest. Camp wanted the officers to return the gun and let him take it back into his house. This they refused. An examination of the gun disclosed it was loaded with two buckshot shells. The defendant being in custody was placed in the police car and the officers started to the police station. A short distance from the scene of the arrest another automobile occupied by Martha Pitts, apparently the person who called for the officers, halted the police car and the officers stopped. They asked her if she wanted to prefer charges against the defendant. Upon being informed that she did she got out of her automobile and got into the police car in the rear left hand side. Officer Lynch was also in the back seat on the right side. Officer Johnson resumed driving towards the police station with defendant Camp on his right in the front seat. The state's evidence shows when they stopped to pick up Martha Pitts the defendant Camp tried to get out, but was pushed back in by Officer Lynch. At this point Camp stated, "I don't want to go to jail, I will die first. If you put me in jail you will never patrol the streets again". This remark it appears from the state's case was directed to Officer Lynch. At this juncture Officer Johnson said he felt some one tug at his pistol in the holster on his right hand side. Officer Johnson said the defendant got the pistol and they began to scuffle for its possession. Officer Johnson said he grabbed the defendant from behind to keep him from pointing it in his direction. To stop the car he drove it up on the curb. The defendant fired one shot out the right front window, striking Luther McCormick, an innocent bystander, in the shoe of his left foot. In the scuffle 3 shots were fired. When the car stopped Officer Lynch and Martha Pitts got out of the car. Officer Johnson said he saw Officer Lynch in the rear glass at the rear of the police car. Johnson said he told Claude Lynch, "Shoot him". The defendant, he stated, jerked loose from his hold and fired one shot out the rear right window. Johnson said he jumped over his back and caught his arm and defendant Camp fired again. The record shows Officer Lynch said, "This man has done killed me". Johnson said that Lynch then made the sign of the Cross and collapsed. Medical proof on behalf of the state showed the shot went through Lynch's neck possibly hitting the jugular vein, in any event some of the larger vessels of the neck and chest, causing Lynch's death. Officer Johnson continued to scuffle for the gun and said a fourth attempt was made to fire the gun but the hammer caught his finger, cutting it but not discharging the shell. Finally, Officer Lonnie Williams who was cruising in another patrol car happened on the scene. Officer Johnson saw him and said to him, "Help me, Buddy, get this gun; get this gun". Officer Williams testified that he recovered the pistol. He demanded that defendant John Camp give it to him 3 times, to which no response was made. He stated the pistol was down under Johnson and Camp and that he got hold of it and wrenched it from the grasp of one of the men, which one he did not know. The state's case was further to the effect that after arriving at the police station John Camp asked the officers in whose custody he happened to be if he had killed Officer Lynch. On being informed that he had, defendant replied that Lynch was a good friend of his, and that Officer Johnson was the one he was after.

The defendant's case was to the effect that Claude Lynch lived across the street from him and they were friends, and he would not have harmed him at all

intentionally. He testified that when Officer Lynch told him to get back in the automobile when he tried to get out when they picked up Martha Pitts, that Officer Lynch struck him a couple of times. His testimony is further to the effect that Officer Johnson struck him in the face several times. The record discloses that he bore the marks of the altercation in and around his mouth, his right eye, his right cheek and his right ear. He stated that after he was pushed back in the automobile and they started to the police station, Officer Johnson reached for his pistol and the scuffle began because he feared for his life. He believed Johnson was going to shoot him, and that he was scuffling with Johnson to keep him from shooting him. He testified at no time did he have possession of the pistol, that the same was discharged during the scuffle. His defense was that in scuffling with Officer Johnson he was trying to defend himself, not being in possession of the pistol at any time and the same being discharged during the scuffle the shooting of Officer Lynch was purely an accident, the result of a misfortune and unintentional. The foregoing constitutes a substantial statement of the evidence herein involved. On cross-examination the defendant admitted that he plead guilty on May 28, 1946, in Federal Court to a charge of Internal Revenue violation and was sentenced to 2 years in the Federal Penitentiary, but placed on probation.

The defendant's first contention is the trial court erred as a matter of law in giving certain instructions and in refusing to give certain requested instructions. We have carefully examined said instructions, both those given and those requested. We are of the opinion that the instructions given, considered as a whole, fairly and correctly state the law applicable to the facts. The law requires nothing more. Storer v. State, 84 Okla. Cr. 176, 180 P. 2d 202; Lamb v. State, 70 Okla. Cr. 236, 105 P. 2d 799. The instructions requested by the applicant in regard to his defense of accident, misfortune, justifiable and excusable homicide and burden of proof were substantially covered by the instructions given. Where such is the situation, refusal to give the requested instruction does not amount to reversible error. Young v. State, 84 Okla. Cr. 71, 179 P. 2d 173, wherein we said:

"Where instructions requested by defendant are fairly covered by the general instructions, case will not be reversed because of failure to give requested instructions."

The defendant's second contention is that the misconduct of the special counsel for the state in his closing argument to the jury in making improper and prejudicial remarks to the jury and in going outside of the record of the case in making statements which were not logical conclusions to be drawn from the evidence, and in a racial appeal to the jury for the sole purpose of inflaming the minds of the jurors and was to the prejudice of the plaintiff in error. This contention is in regard to the statement made by the special prosecutor as follows, "I am sorry for his wife here, who, in the face of his admitted infidelity, goes the last mile". An objection was immediately interposed. The trial court thereupon admonished the jury not to consider said remark. In this connection we have held that where an objection to improper argument is sustained and the jury admonished not to consider the same such argument does not constitute reversible error. Williams v. State, 89 Okla. Cr. 146, 205 P. 2d 1164; Dixon v. State, 56 Okla. Cr. 454, 42 P. 2d 286; Gardner v. State, 5 Okla. Cr. 531, 115 P. 2d 607; Gunnells v. State, 7 Okla. Cr. 98, 122 P. 264. Under the conditions herewith presented this situation does not constitute reversible error. Defendant further complains in this connection that thereafter the special prosecutor made an explanation as to why he made the statement. The trial court ruled that his explanation was within the legitimate bounds of argument. We are inclined to agree. In any event the statement and the ex-

planation as to the reason for making it was in relation to an incidental matter and not on a material point. In this regard it has been held that where remarks of the county attorney in argument were objected to as improper, the remarks will be considered in light of all the evidence in the record, and will not be regarded as grounds for reversal if the remarks are not upon some material point which injuriously affect the rights of the accused. Orrell v. State, 79 Okla. Cr. 300, 154 P. 2d 779, 780; Workman v. State, 83 Okla. Cr. 245, 175 P. 2d 381. It clearly appears in the instant record that the remarks considered in light of all the evidence was not upon a material point such as to injuriously affect the rights of the defendant. We are therefore of the opinion that the explanation for making the hereinbefore mentioned statement would not constitute grounds for reversal.

The foregoing reasoning applies to the remark,

"And so, Gentlemen of the Jury, I am sorry for John, who faces this wall of impregnable darkness, but as I said before, all the pity is not on that side of the table. I am sorry for that devoted wife".

Objection was interposed to the foregoing quotation on the ground that it made reference to Claud Lynch's wife. In light of the context and what preceded it, it clearly appears to us that the reference was not made to Mrs. Lynch but was with reference to the devotion of Mrs. John Camp. This point we believe is wholly without merit. Nevertheless the trial court sustained the objection with the statement that that argument should be left off.

Further complaint is made under this point of the improper argument of special counsel when he said:

"Gentlemen of the Jury, this man here, he is a member of my race, and I am kinda of thin skinned about my people. I love them. Nobody can love the negro race more than I do, nobody could do more for them than I can, because I give my all for them".

To this the defendant objected on the theory that it was an attempt to make a racial appeal in the case, was highly prejudicial and had no place in the argument. We do not so regard the statement as made by counsel, in light of the fact, that the defendant and the decedent, and the state's principal witnesses were all Negroes. Nevertheless the trial court sustained the objection and admonished the jury not to consider any expression of race. As heretofore indicated under such conditions such argument would not constitute prejudicial error. Under this point the defendant raises other objections to the record which we believe likewise to be wholly without merit.

The defendant's third proposition is to the effect that the testimony of Frank Yeager in regard to the conversation of the defendant made at the police station, when the defendant asked if he killed Officer Lynch, not being a free voluntary statement, because he had not been warned of his peril in making the statement or advised of his constitutional rights, under the conditions herewith presented is wholly without merit. The record clearly discloses the defendant voluntarily made the inquiry without any prompting or questioning. It further discloses it was not the result of persuasion, threats, intimidation or abuse, but was a free, voluntary inquiry, and was clearly admissible in evidence. The defendant cites no authority in support of his contention, and it is evident why he failed so to do. To the contrary, in Coleman v. State, 70 Okla. Cr. 246, 104 P. 2d 1004, 1005, 105 P. 2d 431, this court said:

"The fact that the defendant was under arrest and in jail, and was not warned that any statement made by him might be used against him, will not

affect the admissibility of any voluntary statement made by him, which would otherwise be competent."

This rule would likewise apply to voluntary inquiries made by a defendant which might throw light upon his guilt of the crime with which he was charged.

The defendant's fourth proposition is, the court erred in granting and sustaining the state's motions for continuance, filed in said case, and particularly requiring the jury to serve an additional six days beyond the regular jury term, and in singling out and calling special attention to the case against the plaintiff in error; to all of which plaintiff in error duly and timely excepted. This case was set for trial on February 7, 1949. The state requested a continuance from February 7 to February 9 to obtain the attendance of an absent witness. On the 9th of February the case was continued over to the 10th of February for the same purpose. The defendant concedes that the granting of said continuances was a matter within the sound discretion of the trial court and only in case of abuse in refusing to grant a continuance constitutes grounds for reversal. On the 10th of February a further continuance was requested to check and correct an erroneous transcript of the testimony of certain material witnesses, who gave evidence at the preliminary hearing. It appears that this delay was made necessary by reason of the absence of the reporter in another county in attendance at court. It further appears that over the week-end the check of the transcript would have been completed and the state would be ready for trial on the 14th of February. On Monday the 14th of February the case went to trial. Such requests in relation to the continuances herein granted were not unreasonable and therefore not an abuse of discretion. The defendant cites no authority to sustain this contention. This court has held the granting of continuances for such causes does not constitute an abuse of discretion. Gorum v. State, 67 Okla. Cr. 75, 92 P. 2d 1086; Murphy v. State, 72 Okla. Cr. 1, 112 P. 2d 438. Under this proposition the defendant also complains the jury was required to serve an additional 6 days in the trial of this case. Such objection is wholly without merit in view of the provisions of Title 38, § 4, O. S. A. 1941, which reads in part as follows:

"Provided, that if the judge is of the opinion that the jury business of a term of court may be concluded within six days, he may require a jury, or a juror, to remain until the termination of said jury service, by entering an order to that effect upon the court journal; * * *."

The defendant's fifth proposition is that the trial court committed error in permitting the introduction of incompetent evidence and in excluding competent evidence and allowing misconduct on the part of the prosecutor in cross examination. This is a catch-all complaint. An examination discloses that there was some incompetent evidence admitted but such evidence was not of such materiality as to affect the defendant's substantial rights. Such evidence does not constitute grounds for reversal. Johnson v. State, 70 Okla. Cr. 270, 106 P. 2d 149, wherein it was said:

"Where the uncontroverted evidence on the part of the state establishes the guilt of the accused beyond any reasonable doubt, error of the trial court in admitting incompetent evidence does not require reversal unless, on an examination of the entire record, it is apparent that such admission resulted in a miscarriage of justice, or deprived the accused of some constitutional or statutory right."

The record likewise discloses the exclusion of some competent evidence but the exclusion of this evidence was not of such a nature as to materially affect the rights of the defendant. Furthermore it discloses some unwarranted cross-examination and some demonstrations by counsel, but none of the things com-

plained of were of such a character as to warrant a reversal herein. In Nowlin v. State, 65 Okla. Cr. 165, 83 P. 2d 601, it was said: "On appeal, burden is upon appellant to establish both error and prejudice resulting therefrom."

In this respect the defendant has wholly failed. Moreover the defendant cites no authority in support of this contention. Carter v. State, 6 Okla. Cr. 232, 118 P. 264, 265, wherein this court said:

"Where the evidence in a case is clear as to the guilt of an appellant, and there is no reason to believe that upon a second trial an intelligent and honest jury could arrive at any other verdict than that of the guilt of the accused, the judgment of the lower court will not be set aside for anything less than fundamental errors. Dusty legal cobwebs should never be permitted to obscure the truth, or interfere with the enforcement of justice."

Under the record herein presented there is nothing to justify this court in interfering with the judgment and sentence. The guilt of the defendant clearly appears and the errors herein complained of amount to nothing more than harmless error. Title 22, § 1068, O. S. A. 1941, which among other things provides that no judgment shall be set aside or another trial granted by the appellate court of this State in any criminal case on the ground of the improper admission or rejection of evidence, unless in the opinion of the court after an examination of the entire record, it appears that the error complained of has probably resulted in the miscarriage of justice or constitutes a substantial violation of the constitutional or statutory rights. The situations as complained of in this record falls within the clear pronouncement of the foregoing statute and are therefore harmless errors. For all the above and foregoing reasons the judgment and sentence is accordingly affirmed.

JONES and POWELL, JJ., concur.