Bryan FLEMING, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13403.

Court of Criminal Appeals of Oklahoma.

May 5, 1965.

Sullivan & Sullivan, Duncan, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Jack A. Swidensky, Asst. Atty. Gen., Amos Stovall, County Atty., Tillman County, Frederick, for defendant in error.

BRETT, Judge.

The Plaintiff in error, Bryan Fleming, hereinafter referred to as defendant, was charged in the district court of Tillman County with the crime of murder; was tried, and convicted of manslaughter in the first degree; and, pursuant to the verdict of the jury was sentenced to serve 20 years in the State Penitentiary. Defendant has perfected his appeal to this Court.

We have had the benefit of extensive briefs by the defendant and the State, including a supplementary brief filed by the County Attorney of Tillman County.

This homicide was the result of a drinking party, of which the defendant was not a participant. From the evidence, it appears that the deceased, Gordon Rich, on the afternoon of the day in question, went to the home of Frank Blair, in the town of Hollister. Gordon Rich and Blair together consumed a half gallon of wine, and then ate supper, prepared by Blair's wife. After supper they commenced to drink the second half gallon of wine.

Frank Blair went to sleep. Gordon Rich persisted in trying to wake him, during which time Mrs. Blair asked Rich to leave her husband alone, and let him sleep. During the conversation with Mrs. Blair, Gordon Rich threatened to kill her, her husband and her children. He repeated this threat several times that evening. Soon thereafter Frank Blair awoke. At that moment, Gordon Rich said to him, "I'm going to kill you". With that remark Frank Blair struck Rich and knocked him down, and commenced to grapple with him on the floor.

About this time the defendant drove up in the yard and sounded the horn of his pick-up truck. One of the Blair children came to his truck and told the defendant that his mother said for him to come into the house. The defendant reached the front door and asked, "What is going on?" Mrs. Blair said to the defendant, "Come in and help me". The defendant went into the house to help separate the fighting men.

After much discussion, during which time Gordon Rich and Frank Blair fought each other with pocket knives, the defendant and Mr. Blair attempted to get the deceased to leave the Blair home, and return to his own. In response to defendant's suggestion, Gordon Rich cursed the defendant and called him vile names. The evidence is confusing as to what specifically occurred, and who wielded the knives; but it is sufficiently clear to reveal that Gordon Rich and Frank Blair engaged in a knife fight before the defendant became actively engaged in the fight.

It also appears that at one stage of the activity, the defendant was either standing in the door-way with one foot in the living room and one foot on the porch, or was on the porch, when Gordon Rich grabbed the defendant by the over-alls bib, pulled him back into the room, and slashed him across the abdomen with his knife.

The defendant testified that at this moment he became fearful and angry, and felt that he must defend himself. The result was that the two men engaged in a fight with pocket knives. Some time during the evening, when fighting with either Frank Blair or the defendant, Gordon Rich was stabbed with sufficient severity to ultimately cause his death.

The defendant transported Rich to the Frederick Hospital in his pick-up truck. The hospital personnel called the Frederick police, and the deputy sheriff.

According to the evidence, Gordon Rich was suffering from shock when he reached the hospital, and because of his condition several persons where required to hold him on the emergency table. The policemen were already at the hospital when the deputy sheriff arrived. Both police officers testified that the defendant neither admitted nor denied that he did the fatal stabbing of Gordon Rich. Soon after arrival, Gordon Rich died in the hospital.

The only witness called by the State at the preliminary hearing was Mrs. Frank Blair. When it was discovered that the State had not subpoenaed her, and in order to get her testimony before the jury, the defendant called Mrs. Blair to testify.

The defendant cites sixteen errors in his petition, which he argues in his brief under five separate propositions. It will not be necessary to discuss each proposition, but only those which seem most pertinent.

Under his fourth proposition, defendant urges, among others, that the court erred in giving instruction number five, which included the lesser offense of first degree manslaughter; and in the sixth instruction, that the court failed to fully instruct concerning "justifiable homicide". Defendant objected to both instructions, took exceptions, and offered his own instruction in lieu of the court's sixth instruction.

Defendant's requested instruction quoted Title 21 O.S.A. § 733 of the statutes in its entirety. That statute provides:

"Homicide is also justifiable when committed by any person in either of the following cases:

"1. When resisting any attempt to murder such person, or to commit any felony upon him, or upon or in any dwelling house in which such person is; or,

"2. When committed in the lawful defense of such person, or of his or her husband, wife, parent, child, master, mistress, or servant, when there is a reasonable ground to apprehend a design to commit a felony, or to do some great personal injury, and imminent danger of such design being accomplished; or,

"3. When necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed; or in lawfully suppressing any riot; or in lawfully keeping and preserving the peace."

The Court's instruction substantially covered the first and second subdivision of Title 21, § 733, as stated above, but entirely omitted subdivision three. The instruction of the court was as follows:

"Homicide is not without authority of law but justifiable when committed by any person in resisting any attempt to murder him or to commit a felony upon him, or when committed in the lawful defense of such person when there is a reasonable ground to apprehend a design of the person killed to do some great personal injury to the person doing the killing and there is imminent danger of such design being accomplished.

"Excepted to and Weldon Ferris
exceptions allowed District Judge."

This instruction was intended to cover the provisions of the statute. However, it falls short of providing the theory of the defense. The only evidence offered, concerning the fight, was offered by the witness called by the defendant, Mrs. Blair.

The defense in this case rests on two propositions. First, that the defendant was lawfully in the Blair home, attempting to restore the peace; and, secondly, that when he became engaged in the fight, he did so in self-defense, but not until after he was cut across the abdomen by the deceased. When the court failed to provide an instruction on subdivision three of Title 21, § 733, the defendant was denied one phase of his defense.

 Warren on Homicide, Vol. 4, § 335, "Excuse or Justification in General", quotes the following statement:

"A charge which excludes one element of justification and makes justification rest entirely on another and distinctly different theory, although the latter may be correct in the class of cases to which it applies, is restrictive of the right of the accused to have the law based on all the theories of the case given to the jury, and is an error which warrants a new trial."

 This Court has held many times that the defendant's theory of defense, where there is evidence to support that defense, should have an affirmative statement thereof. In Holt v. State, Okl.Cr., 278 P.2d 855, this Court said:

"Defendant has the right to have a clear and affirmative instruction given

to jury, applicable to his defense, based upon hypothesis that it is true, when such evidence affects a material issue in the case."

In Nelson v. State, Okl.Cr., 288 P.2d 429, at page 439, this Court further stated this principle of law:

"It is the duty of the court to instruct the jury from both the standpoint of the state and the defendant; and the defendant had right to have a clear affirmative charge based upon the hypothesis that his testimony and the testimony of his witnesses was true, when this testimony affects a material issue in the case."

We therefore must conclude that the defendant was denied a fundamental right, when the court failed to sufficiently instruct, to cover the theory of defense offered by the defendant. The only witness to the altercation was offered by the defendant, whose testimony corroborated that of the defendant, that he was in the home at her request, and that he was called upon, by her, to help separate the fighters; and, that the defendant did not attempt to fight until after he was attacked by the deceased.

The defendant further complains that the court erred in giving instruction number five, which included the lesser offense of manslaughter.

In Oglesby v. State, 56 Okl.Cr. 286, at page 291, 38 P.2d 32, at page 34, which is supported in numerous cases before and since that opinion was handed down, this Court covered this matter as follows:

"If, therefore, under any view of the evidence, whether of the state or the defendant, there is any substantial evidence tending to reduce the offense to a lower degree of homicide than murder, it is the duty of the court to instruct on such lower degree, but where there is no evidence tending to support the lower degree of the crime, but where all the evidence is that the killing is either murder or excusable

homicide, then it is not necessary for the court to instruct the jury on the law of manslaughter."

Warren on Homicide, Vol. 4, at page 229 states the following rule, relative to an instruction on manslaughter:

"Impropriety of charging on manslaughter where justification is shown: —Where the uncontradicted evidence showed that the killing was done under circumstances making it justifiable homicide, it was improper to charge on manslaughter."

The writer of this opinion is of the conclusion that had the court properly instructed the jury concerning justifiable homicide, then the additional instruction concerning manslaughter would not have necessarily been error. However, when that portion of the statute on justifiable homicide was omitted, on which one theory of defense was based, it constituted error to instruct on first degree manslaughter. Had the jury been placed in a position to determine whether or not the contentions of the defendant were justified, and had thereby concluded that such was not the case, then the manslaughter instruction would not have constituted error. The two matters considered together leaves one to conclude that the jury did not believe the defendant was guilty of murder, or the verdict would not have been returned, as it was, for first degree manslaughter. Such being the case, had the court provided the instruction covering the defendant's entire theory of defense, either with or without the instruction on the lesser included offense, the jury might have returned the verdict as justifiable homicide. Nonetheless, the defendant is entitled to have the jury decide all the facts. But in this case, the jury was not permitted to make that determination, because the instruction restricted the right of the defendant to have the law based on all his theories of the case given to the jury. There can be no doubt that the evidence is sufficient to warrant that issue being submitted to the jury.

There are numerous questions which come to mind when the record is considered. It is highly doubtful that the evidence offered by the State is sufficient to justify the verdict of the jury, and the judgment and sentence of the court. However, it will not be necessary to discuss that phase, for the reason that it is apparent the defendant did not receive an entirely fair and impartial trial before this jury.

Therefore, for the reasons stated herein, the decision of the district court of Tillman County is reversed.

NIX, J., concurs.

BUSSEY, Presiding Judge (especially concurring).

I am of the opinion that this case should be reversed for the reason that the evidence presented for the consideration of the jury is so vague and inconclusive, when viewed in the most favorable light for the State, that it is insufficient to support the verdict of the jury.