**Robert MONTGOMERY, Plaintiff-In-Error,**

**v.**

**The STATE of Oklahoma, Defendant-in-Error.**

**No. A–14144.**

Court of Criminal Appeals of Oklahoma.

Nov. 20, 1968.

Whit Pate, Poteau, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

This is an appeal from a conviction for the crime of murder. Plaintiff in error, Robert Montgomery, hereafter referred to as defendant, was tried in the District Court of LeFlore County by a jury, which found him guilty and assessed his punishment at life imprisonment. The information alleged that defendant committed the crime of murder on May 16, 1965, when he caused the death of Hubert McClish, by shooting him with a .22 caliber rifle. Defendant's motion for new trial was overruled after which he perfected his appeal to this Court.

Defendant was represented by counsel of his own choice who represented him ably, and preserved all his rights throughout all the proceedings. From the record, it appears that defendant was granted casemade at State expense, for the purpose of perfecting his appeal. Oral arguments were had before this Court on April 25, 1967, when defendant's counsel appeared and argued the appeal.

In his brief, defendant sets forth three propositions and briefly states the fourth in his conclusion. The first proposition states: "The evidence was not sufficient to support a murder conviction."

It appears to be the position of defendant's argument that insofar as the evidence was of such conflicting nature that its weight and sufficiency was not enough to sustain the verdict on a charge of murder. The record reveals, however, that the State introduced testimony from fifteen witnesses in the trial of this case. Much of the testimony contained admissions made by the defendant, that he did commit the murder; however, in one instance the witness testified that he heard defendant deny having committed the murder. Of the fifteen witnesses, seven were Negroes among whom there seems to have been some degree of kinship either by marriage or blood relationship, as well as with the defendant.

The record reveals that the deputy sheriff and the service station operator who accompanied the deputy, both testified that defendant admitted to them, on separate occasions, that he shot and killed the deceased. This testimony, coupled with testimony from other witnesses, appears to have convinced the jury that defendant was guilty. In contrast to the State's evidence, the defendant did not testify, nor did he offer the testimony of any other witness.

This Court has long held that where the evidence is conflicting and different inferences may be drawn from it, and in which case the evidence presents sufficient factual situation, such becomes a question of fact for the jury to determine. It was provided in Williams v. State, 4 Okl.Cr. 523, 114 P. 1114:

"When there is evidence in the record from which the jury could legitimately draw the conclusion of guilt, a judgment of conviction will not be set aside upon the ground that the evidence does not support the verdict, unless the testimony is such as to show that the jury was influenced by improper motives in arriving at their verdict."

and in Sloan v. State, 25 Okl.Cr. 15, 218 P. 717:

"In a prosecution for murder, evidence reviewed, and HELD, that the issue of the defendant's guilt or innocence was for the determination of the jury, and that the defendant's conviction should not be interfered with by the appellate court."

It was also provided in Pierce v. State, 371 P.2d 924:

"In murder prosecution, where there is competent evidence in the record from which the jury could reasonably conclude that defendant was guilty of manslaughter in first degree, Court of Criminal Appeals will not interfere with verdict, even if there is sharp conflict in the evidence and different inferences might be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts."

In the instant case there is sufficient evidence, even though circumstantial, on which the jury could reach its verdict.

Defendant's second proposition states: "The Court erred in the admission

into evidence of the testimony of four different police officers concerning purported admissions made by the defendant." The essential support offered for this proposition is The United States Supreme Court case of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Defendant recites in his brief that he was not properly advised of his rights before any questions were offered him. However, we observe that Deputy Sheriff Moore testified, the first admission he heard defendant make was when someone accused defendant by saying, "You didn't have no business killing that boy." Deputy Moore related that defendant replied, "No, but I did and I will kill you too." The deputy testified further, that he did not know, at the time this accusation was made of defendant, that anyone had been killed. Hence, the Miranda holding would not be applicable in that instance.

The record also reveals that the defendant made an admission to Mr. Howard Schrimscher, the service station operator who accompanied the deputy sheriff to the vicinity of the crime. He testified that when defendant was put into the deputy's car where Schrimscher was sitting, the witness asked defendant, "did you really kill a man" and the defendant replied, "I did." Schrimscher then asked, "what with"; and defendant answered, "a twenty-two."

The defendant admits in his brief that according to the United States Supreme Court decision in Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, the Miranda holdings are not retroactive to cases commenced prior to June 13, 1966, but argues the principle advanced in the Miranda decision should still prevail in defendant's case, even though it was commenced before that date. However, even admitting defendant's contention, concerning the Miranda decision, it is without merit. The admission made to Officer Tony Russell, the Panama Town Marshal who took defendant to the hospital, did not result from any interrogation by the officer. Instead, defendant's statements were made voluntarily on the way to the hospital,

when defendant commenced to cry about what he had done. Much the same is true concerning the admission made of Officer Edgar Nichols, of the Poteau Police Department, who stood guard over defendant in the hospital x-ray room; and also, when Officer Jess Wells made defendant's fingerprints the next morning. All three of defendant's statements did not result from interrogation, but were voluntarily uttered because of defendant's regrets at what he had done.

■ The U.S. Supreme Court did not hold in the Miranda decision that voluntary statements, made by an accused in custody, are inadmissible. Instead, that decision holds that voluntary statements of an accused in custody may be admissible into evidence, under circumstances shown to be free of coercion, and especially when such statements were truly voluntarily made, as in this case. However, as we read the record before this Court, even if the testimony of the four officers were excluded from the evidence against defendant, there still remains other evidence sufficient to sustain the jury's verdict. We are therefore of the opinion that the trial court did not commit error by admitting the testimony of the officers, as complained of by defendant.

The third proposition provides: "Misconduct on the part of the State's Attorneys during final argument to the jury which was so flagrant and patently prejudicial as to effectively deprive the defendant of a fair trial and of due process of law, under the law and Constitutions of Oklahoma and the United States."

■ Defendant first alleges improper comment by the prosecution because of a statement that, "Now this is uncontradicted. There's no one for the defense has come forward to contradict this." Plaintiff in error cites the case of Patman v. State, 95 Okl.Cr. 415, 247 P.2d 308, as authority. The Patman case is clearly not in point. In that case the only question involved was whether it was proper for the judge to instruct the jury concerning the defendant's failure to testify in his own behalf. That

is not the situation in the case at bar. In this regard, the case of Denney v. State, Okl.Cr., 346 P.2d 359, contains a factual situation similar to this case; and in Denney, this Court cited and quoted from the earlier decision of Chesser v. State, 63 Okl. Cr. 84, 73 P.2d 191, wherein it was stated that,

"Statements of the prosecuting attorney, in argument to the jury, 'why couldn't they contradict the state's testimony, but not one place do they do that,' and 'I say again there is no evidence offered to contradict the state's evidence in this case' held not a comment upon the failure of the defendant to testify as a witness in his own behalf * * *."

■ Defendant also alleges error because of a statement by the prosecutor concerning the "intention" of the victim. Even though the statement may have been improper, it was corrected when the trial court admonished counsel and directed the jury to disregard the statement. This Court held in Camp v. State, 95 Okl.Cr. 70, 239 P.2d 1036:

"Where objection to an improper argument is sustained and the jury is admonished not to consider argument, such argument may not constitute reversible error."

■ It has also been held, in order for improper remarks to constitute reversible error, the remarks of a prosecuting attorney during argument must have been such as to improperly influence the verdict. We fail to see how the remark complained of in this instance could have had such influencing effect on the jury.

■ Defendant contends also that the prosecutor's statements in his closing argument, to which defendant objected, wherein he made reference to the witnesses being Negro, and of African descent, was an effort to introduce racial overtones. We do not agree with defendant's position in that the remarks were in no respect derogatory, nor critical. As is recited in Camp v. State, supra:

"[D]efendant objected on the theory that it was an attempt to make a racial appeal in the case, was highly prejudicial and had no place in the argument. We do not so regard the statement as made by counsel, in light of the fact, that the defendant and the decedent, and the state's principal witnesses were all Negroes."

Such was the situation in the instant case, except that seven of the fifteen state witnesses were Negro, as was the defendant and deceased. This Court continued in the Camp case:

"Nevertheless the trial court sustained the objection and admonished the jury not to consider any expression of race. As heretofore indicated under such conditions such argument would not constitute prejudicial error."

In the instant case counsel was properly admonished. Nonetheless, we fail to see how the prosecutor's remarks could have been prejudicial, even though the trial court properly sustained defendant's objection to any reference to race.

Defendant cites two cases to support his proposition, Morehead v. State, 12 Okl.Cr. 62, 151 P. 1183; and Hamilton v. State, 38 Okl.Cr. 62, 259 P. 168; but due to the fact that the remarks encountered in those cases were entirely different from those in the instant case, neither case is applicable here.

■ Defendant next alleges error when the prosecutor referred to one of the jurors by name, to which defendant objected and his objection was sustained, and counsel was admonished by the trial court to refrain from making such personal reference to the jurors. While this Court has held that counsel should refrain from engaging in any such intimacy with the jury, where defendant's objection was sustained and the prosecutor was properly admonished any error was cured. See: McMahan v. State, Okl.Cr., 354 P.2d 476.

■ Next, defendant alleges the closing remarks of the special prosecutor constituted reversible error when he commented on defendant's guilt. This court held in Igo v. State, Okl.Cr., 267 P.2d 1082, that a pros-

ecutor may state his opinion as to defendant's guilt, when he also states that his opinion is based on the evidence of the case. In the instant case the special prosecutor's preceding remarks had dealt with the evidence offered against defendant, and even though he did not include the specific words, "based on the evidence" it is apparent such was his intention. Also as recited in Fry v. State, 91 Okl.Cr. 326, 218 P.2d 643, even though the closing remarks of the special prosecutor were improper, "in light of the whole record, we believe the argument in no way influenced the jury's verdict of guilty." In the *Fry* case, however, there was additional prejudicial cross-examination by the special prosecutor to be considered, which does not appear in this case. We therefore conclude that even though the special prosecutor's remark was improper, it was not sufficient to cause the jury to return the verdict of guilty, in face of the evidence considered. Likewise, in light of the testimony and evidence presented, such remark is not—in this case—reversible error.

And lastly, defendant states: "Assuming the evidence is sufficient to support the verdict, such evidence of murder by this defendant was of such weak and contradictory nature that the slightest deviation from a fair trial apart from the question of sufficiency is enough to warrant a reversal and the granting of a new trial." But as has already been pointed out herein, where the evidence is contradictory such is a question of fact for the jury to resolve. In this case the jury resolved that question against defendant.

We are therefore of the opinion that the judgment and sentence herein should be, and the same is, affirmed.

Affirmed.

NIX P. J., and BUSSEY, J., concur.