Kenneth Paul GOODSON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–17456.

Court of Criminal Appeals of Oklahoma.

Jan. 10, 1973.

Don Anderson, Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Robert Dennis, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Kenneth Paul Goodson, hereinafter referred to as defendant, was charged and tried in the District Court of Oklahoma County with Co-defendant Joe Earnest Melton for two offenses of Robbery With Firearms, After Former Conviction of a Felony. The co-defendant, Melton, was acquitted and defendant was found guilty of both charges and sentenced to terms of fifteen (15) years imprisonment on each charge, to run concurrently. From said judgments and sentences, a timely appeal has been perfected to this Court.

At the trial, the trial court conducted an evidentiary hearing outside the presence of the jury concerning the identification of the defendants. After hearing the evidence, the trial court found that the identification of the two victims was primarily based upon their observations at the time of the alleged robbery and ruled that they would be permitted to make in-court identifications.

John Franklin Hall testified that on July 9, 1971 he was employed at Bill's Derby Service Station at Southwest 29th and Portland in Oklahoma City. His father was at the station keeping him company on the night in question. About 3:00 a. m., two men, whom he identified in court as defendants, entered the station. Each had a nylon stocking over his head. He testified that the lighting in the station was very good and that he was able to see through the nylon stockings. The defendant had a gun and stated, "Let's move. This is a robbery." (Tr. 60) The defendant ordered Hall and his father to go to the rear of the station and lie down. Defendant stated, "don't move or he would kill us." (Tr. 61) The defendant then took Hall's billfold and his father's billfold and watch. Co-defendant Melton took an envelope from the desk of the station containing Sixty Dollars ($60.00). He further testified that State's Exhibit 5 appeared to "be similar" to the weapon that the defendant had.

On cross-examination, Hall testified that a week or ten days later, he and his father went to the police station and looked at

mug shots. He later identified the defendant from approximately six photographs shown to him at his home by a police officer. He also picked Goodwin out of a lineup at the police station. At a second lineup, he picked out Melton as one of the robbers, Melton being No. 4 in the lineup. He admitted testifying at the preliminary hearing that Melton was No. 5 in the lineup.

Cecil Hall testified that he was with his son that night at the service station. His testimony concerning the robbery did not differ substantially from that of his son. He identified both the defendant and Melton in court as the robbers.

On cross-examination, he testified that he identified the defendant from six or seven pictures shown to him by the police. He further testified that he identified both the defendant and Co-defendant Melton at the police lineup.

Detective Tash testified that he was assigned to investigate the robbery of the Derby station. On July 23, he went to the defendant's home and defendant's father gave him a pistol, State's Exhibit 5.

Detective Snipes testified that he had occasion to escort the defendant from a lineup to his cell. Defendant asked, " 'How did the lineup go?' " to which Snipes replied, " 'fine.' " (Tr. 121) The defendant then stated, " 'Next time I will blow their fucking heads off.' " He testified that he subsequently interrogated the defendant concerning the robbery. After advising the defendant of his Miranda rights, he questioned the defendant concerning the other robber. The defendant stated "that he could do ninety-nine years standing on his head. He would rather do the time for both of them than to snitch the other one off." (Tr. 116)

The defendant testified that he was twenty years old and had previously been convicted of Larceny of an Automobile and Escaping Prison. He denied committing the robbery at the service station. He

further denied making the statement to Snipes about "blowing their heads off" and that he would "rather do ninety-nine years for both of us."

Andy Mars testified that he participated in the lineup with the defendant and that he rode in the elevator with Officer Snipes and the defendant. He testified that the defendant did not make any statement to Snipes concerning blowing their heads off.

Kenneth Goodson, the defendant's father, testified that the defendant was at home when he went to bed at 1:00 on the morning in question. When he awoke the following morning, the defendant was still at home.

Co-defendant Melton testified that he did not rob the service station. He testified that he was either in jail or at home at the time of the robbery.

Kathy Melton, Co-defendant Melton's wife, testified that she was "almost positive he was home with me because we never did go anywheres without each other."

The first proposition asserts that the evidence is insufficient to sustain a verdict. Defendant argues that the testimony of the Halls "is so weak and contradictory as to be unworthy of belief." We have consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, this Court will not interfere with the verdict even though there is sharp conflict in the evidence and different inferences may be drawn therefrom. It is the exclusive province of the jury to weigh the evidence and determine the facts. Jones v. State, Okl.Cr., 468 P.2d 805. It is readily apparent that the jury chose to believe the testimony of the State's witnesses. We are of the opinion that the testimony of the Halls was not so weak and contradictory as to be unworthy of belief. We, therefore, find this proposition to be without merit.

The final proposition contends that the prosecuting attorney made improper ar-

gument to the jury. The defendant first objects to the statement the prosecuting attorney made in arguing the credibility of the defendant as compared to that of Officer Snipes wherein he stated, "You match that up with the testimony of Bill Snipes who is a policeman, and I will grant you that they are called pigs. They are called fuzz, and they are called a lot of things, but they are your policemen." (Tr. 11) The defendant objected to the argument but did not ask the court to admonish the jury to disregard the statement. The prosecuting attorney later stated:

"Mr. Hamilton says it is not clear, cogent and convincing to him. Of course he is not the jury. You are the jury. You are the ones to decide. Mr. Hamilton would give some example. I think one happened yesterday, a bank robbery, down in Marlow or someplace where you remember they said they took somebody in custody just a little bit after it, but they determined it wasn't him, and they turned him loose. I tell you, in police investigations, that happens a lot of times." (Tr. 54)

The trial court sustained defendant's objection to the statement and admonished the jury to disregard it. We have previously held that where counsel for the defendant believes that the prosecutor has made improper statements in his closing argument, a timely objection should be made together with a request that the jury be instructed to disregard the improper statement. Pitts v. State, Okl.Cr., 431 P.2d 449. We have further held that where objection to an improper argument is sustained and the jury is admonished not to consider the argument, such argument may not constitute reversible error. Montgomery v. State, Okl.Cr., 447 P.2d 469. We are of the opinion that the argument by the prosecuting attorney was not so grossly unfair and unwarranted as to improperly prejudice the jury. The judgment and sentence is, accordingly, affirmed.

BLISS, P. J., and BRETT, J., concur.