14 P.(2d) 267

**STATE v. DAVIS.**

No. 3720.

Supreme Court of New Mexico.

Aug. 25, 1932.

J. S. McCall, of Carlsbad, and Zeb A. Stewart, of Harlan, Ky., for appellant.

E. K. Neumann, Atty. Gen., and Quincy D. Adams, Asst. Atty. Gen., for the State.

WATSON, J.

Frank Davis was convicted of murder in the first degree for the killing of James Elliott.

March 30th last, we handed down an opinion affirming the judgment. On one point our views have changed. It being decisive, the others do not require consideration. The original opinion will therefore be withdrawn.

At the trial, murder in both degrees was submitted to the jury. Voluntary manslaughter was not. If it was within the evidence, it is immaterial that appellant failed to request its submission. State v. Diaz, 36 N. M. 284, 13 P.(2d) 883.

We are not here concerned with conflicts in the evidence. We must accept appellant's version of the homicide as it appears in his testimony. He had driven into Carlsbad on the morning and had parked his car. Proceeding along the sidewalk toward a restaurant for breakfast, some one, whose voice he did not recognize, hailed him from a parked car, exclaiming loudly, "Oh, say, Frank!" Appellant whirled and started toward the parked car, recognizing the deceased just as he reached the curb ready to step off. As he stepped off the curb he asked of the deceased, "What do you say?" The deceased replied, "That," at the same moment raising his gun and shooting at appellant through the car window.

From this point appellant testified:

"A. Well, at the minute I saw the gun, it scared me and I jumped. I don't know how far I jumped, anything of the kind, but I distinctly remember jumping about the time I jumped to the left he fired, and the bullet struck me through the arm, and I thought to myself I was shot, that was the reflection that went through my mind and I immediately grabbed for my gun which I was holding, which I had in my belt of my trousers, stuck down on the inside of my trousers and my arm was kind of numb and I couldn't get it out immediately, as quick as I could have otherwise, and by the time I got my gun out and had it pointed at Elliott and got in shooting position, Elliott shot me a second time, shot at me a second time.

"Q. What else, if anything, did you do? A. I began shooting.

"Q. How many shots, if you know, did you fire? A. I don't know.

"Q. Did you empty your gun? A. Yes, sir; shot it as long as it would shoot. I don't know whether it was empty or not, might have been a misfire, I hardly think so.

"Q. What led you to believe that you were shot? A. Well, I had a, when that bullet hit me, hit my arm, it jerked my arm back, it left a hot, burning sensation there, and when the second bullet hit my clothing, it

310

jerked my clothing like someone had got hold of the coat and yanked.

"Q. Why did you shoot at, or shoot Mr. Elliott, Mr. Davis? A. To defend my own life."

There was physical evidence that appellant had been shot in the arm, and again through the clothing.

Under the doctrine that a homicide committed in the heat of passion, engendered by terror, is voluntary manslaughter, laid down in State v. Kidd, 24 N. M. 572, 175 P. 772, it is plain that appellant was entitled to the submission of that offense.

The judgment must be reversed. The cause will be remanded with a direction to award a new trial. It is so ordered.

BICKLEY, C. J., and SADLER and HUDSPETH, JJ., concur.