42 P.(2d) 201

## STATE v. LAYMAN.

No. 4016.

Supreme Court of New Mexico.

March 13, 1935.

Elfego Baca, of Albuquerque, and J. B. Newell, of Las Cruces, for appellant.

E. K. Neumann, Atty. Gen., and Frank H. Patton, Asst. Atty. Gen., for the State.

BICKLEY, Justice.

Appellant, charged with first-degree murder and convicted of second-degree thereof, claims error for failure to submit the issues of voluntary and involuntary manslaughter.

In State v. Reed and Beck, 39 N. M. 44, 39 P.(2d) 1005, 1006, we recently said: "It is firmly established that it is error to refuse to instruct on a degree of homicide of which there is substantial evidence and error to submit a degree of homicide of which there is no evidence. State v. Hunt, 30 N. M. 273, 231 P. 703."

Passing by a question of whether a charge of involuntary manslaughter is necessarily included in the murder charge, we do not find that the evidence required the submission of an instruction as to involuntary manslaughter.

A consideration of the record brings us to the conclusion that under the principle laid down in State v. Kidd, 24 N. M. 572, 175 P. 772, voluntary manslaughter was within the evidence and it was error for the court to refuse to instruct as to the law thereof. See State v. Diaz, 36 N. M. 284, 13 P.(2d) 883.

The judgment must be reversed and the cause remanded for a new trial, and it is so ordered.

SADLER, C. J., and WATSON, and ZINN, JJ., concur.

HUDSPETH, Justice (dissenting).

The heat of passion doctrine relied upon by the majority as laid down in State v. Kidd, 24 N. M. 572, 175 P. 772, has never before been found applicable to the case of one who puts himself in the posture of armed defiance to the process of the state.

The appellant admitted that he armed himself after he heard voices outside the house of his brother-in-law, a one-room cottage, which the sheriff, the deceased, and other officers, approached about 9 o'clock at night. On the previous night in Albuquerque, Bernalillo county, the appellant engaged in an

affray, refused to submit to arrest, and ran off. A warrant was issued by a justice of the peace for his arrest on a charge of assault with intent to kill. He fled to Torrance county, followed by the sheriff of Bernalillo county, who turned the warrant over to Rex Meador, the sheriff of Torrance county. Meador took up the pursuit accompanied by his twenty year old son, the sheriff of Bernalillo county, and other officers. The appellant was a felon on parole—out of prison less than two months—with years of his sentence hanging over him.

When a convict is released on parole in this state, he signs a parole agreement, a copy of which he carries with him as his warrant for being at large, which provides:

" * * * Third: He must not leave the place to which he is sent unless by order of, or upon permission from, the Board of Parole first obtained in writing.

" * * * Fifth: He must abstain from the use of intoxicating liquor IN ANY FORM. * * *

" * * * Eighth: A violation of any of the above rules forfeits the parole on the part of the party paroled, and renders him liable to be returned to the Penitentiary to serve out the maximum sentence."

Whenever he transgresses any of the restraints imposed upon him, he may be arrested without warrant and recommitted to prison without judicial hearing. Ex parte Vigil, 24 N. M. 640, 175 P. 713.

" * * * He is not a citizen, nor entitled to invoke the organic safeguards which hedge about the citizen's liberty, but he is a felon, at large by the mere grace of the executive, and not entitled to be at large after he has breached the conditions upon which that grace was extended to him." Fuller v. State, 122 Ala. 32, 26 So. 146, 148, 45 L. R. A. 502, 82 Am. St. Rep. 1.

Spencer, appellant's brother-in-law, in whose residence he had taken refuge, objected to the officers searching the house when he was informed by the sheriff of Torrance county that he had a warrant for the arrest of Jack Layman. A parley ensued and Meador finally expressed the opinion that he did not need a search warrant, but said he would ask the sheriff of Bernalillo county, who had had more experience as an officer, and who was guarding another house on the premises at the time. After this conference one of the other officers was dispatched to the justice of the peace for a search warrant. Before he returned Spencer agreed that they might search his house after the officers had promised that they would not disturb his beer and whisky. Spencer tried to open the front door but it was locked. He called to his wife to unlock the door, stating to her that the sheriff had agreed not to disturb their beer and whisky. The door was unlocked and the sheriff entered pushing the brother of appellant before him, followed by Spencer and the sheriff's son, the deceased. About the time the door was opened, the light in the house was put out, but the sheriff had a flash-light and he saw the appellant standing near the middle of the room with a pistol in his hand. The sheriff commanded: "Throw up your hands." He testified that: "During

the scuffle to get to Jack my flash light was knocked off of him several times," and his son, the deceased, said, "Dad they have trapped us, let's get him," but the sheriff replied to his son, "No don't shoot." The brother ran to appellant, and kept between appellant and the officers; but the pistol arm of appellant was at all times free with which to menace the officers.

It appears that the sheriff finally threw off his assailants and played the rays of the flash-light on the defendant just as he was making his escape through the back door. When appellant left by the back door the deceased ran out the front door for the purpose of intercepting him. The following is from his dying declaration: "When I saw Jack going out the back door I turned and ran out the front door and ran around the end of the house and as I came to the north east corner of the house Jack shot me here in the side." As deceased fell he shot at the defendant. The appellant's story of what occurred is that the deceased shot first, and that he (appellant) was· on his knees with both hands up and had said, "I give up," twice before the deceased shot him in the leg, after which he knocked the deceased's gun aside, pulled his pistol out of his shoe, and shot the deceased. The jury evidently did not believe appellant, since they were given full instructions on the law of self-defense.

Was appellant justified in his refusal to obey the command of the sheriff? It was suggested in conference that the sheriff had failed to perform his duty, in that he did not notify appellant that he had a warrant for his arrest and call upon the appellant to surrender in the name of the law. "Throw up your hands," is the common and proper language used by officers to a party sought to be arrested who is armed and in a belligerent posture. State v. Gay, 18 Mont. 51, 44 P. 411. In State v. Taylor et al., 70 Vt. 1, 39 A. 447, 450, 42 L. R. A. 673, 67 Am. St. Rep. 648, the court said: "It is beyond question that, in making an arrest by virtue of a warrant, the officer cannot be required to show the warrant, or state the substance of it, until the arrest is accomplished." That the appellant knew that he was the party sought and that these men were officers of the law, there can be no question. His own admissions furnish sufficient evidence. According to the theory of the state, appellant had left Albuquerque to avoid arrest. The long delay caused by the brother-in-law's refusal to consent to the officers searching the house, and conversation between the brother-in-law and his wife when he requested her to unlock the door, afford additional proof that the defendant had knowledge of the character and purpose of the men entering the room with his brother and brother-in-law.

In addition to the charge of intent to kill, on which the warrant in the hands of the sheriff was issued, appellant's testimony shows the violation of the second and fifth articles of his parole agreement. Appellant testified that when he left his brother-in-law's house through the north door he saw a man at the northwest corner of the house, and that he walked toward the northeast corner. His actions show clearly that at the time of the homicide he was fleeing in order to avoid

being taken into custody of the law on a felony charge. Mr. Chief Justice Parker in State v. Smelcer, 30 N. M. 122, 228 P. 183, 184, commenting upon the proposition that the facts required the submission to the jury of the question of involuntary manslaughter, said: "They had committed two or more felonies, and were still carrying the same out, and were attempting to escape arrest. The drawing of the Winchester on the sheriff was an assault with a deadly weapon, as was the drawing of the six-shooter by the other appellant, and both were felonies. The resistance of the sheriff was itself a felony. Section 1666, Code 1915. It thus appears that, the appellants being engaged in the commission of a felony, there was no occasion to submit involuntary manslaughter to the jury. That a killing under these circumstances is murder in the first degree. * * *" Citing cases. The deceased at the time of the homicide was acting as the assistant of the sheriff and obeying his orders. The appellant had knowledge of this fact and the killing of the deceased was of the same grade of crime as if appellant had killed the sheriff. Full and fair instructions were given the jury covering the status of the deceased, as well as on the law on arrest and resistance to unlawful arrest. It may be suggested that the court erred in submitting murder in the second degree, but the appellant failed to raise this point in either court and invited the error in his requested instructions. Therein the case at bar differs from State v. Reed et al., 39 N. M. 44, 39 P.(2d) 1005. In my opinion, it would be less harmful to the administration of justice for the appellant to go unwhipped of justice than for the doctrine of the Smelcer Case to be overturned. I dissent.