**Fred McFAY, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. A–17665.**

Court of Criminal Appeals of Oklahoma.

March 5, 1973.

Rehearing Denied April 6, 1973.

Red Ivy, Chickasha, and Justus Hefley, Anadarko, for appellant.

Larry Derryberry, Atty. Gen., and Michael Jackson, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Fred McFay, hereinafter referred to as defendant, was charged in the District Court of Caddo County with the offense of Murder, Case No. CRF–71–70; he was convicted of the lesser offense of Manslaughter in the First Degree, his punishment fixed at five (5) years imprisonment and from said judgment and sentence, a timely appeal has been perfected to this Court.

Briefly stated the evidence at the trial adduced that in the early morning hours of August 1, 1971, there was a disturbance at the Coco Mello Club, operated by the defendant in Anadarko. The defendant requested that the Anadarko Police arrest Jerry Barton, along with others, for using profane language and disturbing the peace. Captain Brown testified that he placed Barton under arrest and as Barton was being placed in the police unit, he stated to the defendant that he would get even with him and kill him. Barton was taken to the Anadarko Police Station and was jailed for approximately one hour until he was bonded out by George Wilson. Barton appeared to be fairly calm when he was released and stated that he was going home. Brown returned to the neighborhood to attempt to arrest another person involved in the disturbance when George Wilson came running down the street yelling that the defendant had just shot Jerry. He proceeded to the club and found that it was locked up and dark. He looked "all over that part of town" for the defendant and subsequently found him at his attorney's house.

Dr. Roberson testified that he treated Jerry Barton at the Anadarko hospital for a gunshot wound in the right upper abdomen. Barton expired approximately thirty minutes later. The cause of death being the gunshot wound.

Dr. Marshall testified that he was a consultant pathologist with the State Medical Examiners System. He performed an autopsy on the body of Jerry Barton and the cause of death in his opinion was peritonitis caused by the gunshot wound.

George Wilson testified that he posted Barton's bond at approximately 3:00 A.M. on the morning in question. He, Charles Smith, and Barton decided to go into the Coco Mello Club and get a beer. Barton started in the door and a shot was fired. He next observed Barton laying on the floor. Barton asked the defendant, "Why did you shoot me? All I did was come in here to get a beer." (Tr. 70) He observed the defendant standing over Barton with a gun in his hand. He testified that Barton did not have any type of weapon when he entered the club. The defendant went outside, got into his car and left still carrying the gun.

Charles Smith's testimony did not differ substantially from the testimony of witness Wilson. He testified that he was directly behind Barton as he entered the door. Barton did not have any type of weapon on his person prior to entering. He admitted that he did not like the defendant and that he had tried to burn down the defendant's club and was charged with assaulting him with a dangerous weapon.

Morris Johnson testified that he was outside the Coco Mello Club on the morning in question. He heard a shot fired and observed the defendant coming out of the building with a pistol in his hand. Defendant got into his car and left. He drove Barton to the hospital in his car. On the way to the hospital, the defendant tried to force his car off the road.

Ricky Nuckols testified that he was outside the club when he heard a shot fired. The defendant started towards his car and then turned around and "racked his automatic back". Defendant pointed the gun at him and stated, "Did I want some too." He replied, "No I didn't." (Tr. 112) Defendant got into his car and drove off.

Ulysses Brewster testified that he was at the Coco Mello Club on the morning in question. The defendant walked in the club followed shortly thereafter by Jerry Barton. The defendant turned and said to Barton, "Goddam it, why don't you kill me?" (Tr. 123) The defendant then pulled a pistol out of his right pocket and shot Barton. Barton did not have any type of weapon in his hand.

Connie Doakes testified that she was in the club on the morning in question. The defendant came into the club and told an employee to close up. The defendant turned around and started back to the door when Jerry Barton started in. Defendant stated, "Oh, there you are. You said you was going to kill me." The defendant went for his front pocket and she heard a shot. Barton fell to the floor. Barton did not lunge toward the defendant nor did she see any weapon in his hands.

The defendant testified in his own behalf that he was fifty years old and had a chronic heart disease. He had Barton arrested earlier for using profane language. As Barton was leaving in the police car, he stated that, "I'll be back and I'm going to kill you." (Tr. 150) He went to the police department to file charges and as he returned to the club, he observed Barton getting out of a car. He went into the club and told his employee to close up. He turned around and observed Barton coming in the door. He asked Barton why he came back, whereupon Barton said, "What did I tell you I was going to do? I said I was going to kill you." (Tr. 151) Barton had a knife in his hands and he removed his revolver and shot Barton. He got into his car and went to a pay telephone to call an ambulance. The line was busy and he got back into his car and drove back towards the club. He observed the car that Barton had gotten out of earlier coming towards him and he decided, "They are liable to come and cause me more trouble and I better get on out of town." (Tr. 152) He drove down the highway and threw the gun out the window. He noticed that he

was in the area where his attorney lived and went to his house. He told his attorney that he had shot a man and that he wanted protection. He testified that Barton was a violent person and had threatened to kill him if he ever had him arrested.

Three police officers testified that they were present when Barton was placed under arrest. Barton threatened the defendant as he was being taken away.

Ronald Klinecole testified that in the summer of 1971, Jerry Barton attacked him with a knife.

Billy Gene Jenkins testified that he talked about the case with Charles Smith. Smith stated that Barton had a knife or something and was going in the club to get the defendant.

Dr. Corbin testified that he was the defendant's doctor. That on August 1, 1971, the defendant suffered from rheumatic fever and heart disease.

■■ The first proposition asserts that the trial court erred in permitting the introduction of medical testimony after the defendant had offered to stipulate as to the nature of the wound and the cause of death. Defendant argues that the introduction of such gory testimony served no purpose except to create prejudice in the minds of the jury. We are of the opinion that this proposition is without merit. In Shepherd v. State, 51 Okl.Cr. 209, 300 P. 421, the court stated in the fourth Syllabus:

> "The right of the state, or of the accused, to present material evidence in support of an issue, cannot be taken away or the force of the evidence weakened by an admission or stipulation of the facts sought to be proven."

We further observe that the medical testimony was not so gory as to prejudice the defendant. The evidence was limited to the nature of the bullet wound which subsequently resulted in the death of Barton. No pictures of the deceased body were introduced.

■ The final proposition asserts that the court erroneously instructed the jury. Defendant argues that the court erred in giving an instruction relating to flight and giving an instruction on the lesser included offense of First Degree Manslaughter. From the foregoing statement of facts, we observe that the court properly instructed on First Degree Manslaughter. See Tarter v. State, Okl.Cr., 359 P.2d 596. The record reflects that the defendant objected to the instructions as a whole and specifically to the flight instruction number 18–A. Defendant contends that he left the scene for the purpose of calling an ambulance and after being unable to contact the ambulance service, because the line was busy, he proceeded to the home of his attorney for the purpose of turning himself in to the law enforcement authorities. The State's evidence adduced that the defendant left the scene after threatening one of the witnesses with the weapon. Morris Johnson testified that as he was taking Barton to the hospital, the defendant tried to force his car off the road. The defendant testified that after seeing the car coming toward him, he decided, "They are liable to come and cause me more trouble and I better get on out of town." At which time, "I headed south." (Tr. 152) Under such circumstances, we are of the opinion that the trial court properly submitted the question of flight to the jury to decide whether the actions of the defendant were for the reason of evading apprehension and being charged with a crime or merely to summon help and to escape a pursuer. The court's instruction on flight was as follows:

> "You are instructed that evidence has been offered relative to the departure of the defendant after the alleged shooting had occurred, including the defendant's explanation of his departure from the scene of the difficulty.

> "If you find from the evidence that the defendant did flee from the place of the alleged shooting, and that such flight was induced by his apprehension of being charged with a public offense by

reason thereof, this is a circumstance you may consider in connection with all the other evidence to aid you in determining the question of the guilt or innocence of the defendant."

In conclusion, we observe that the record is free of any error which would justify modification or require reversal. The judgment and sentence is affirmed.

BLISS and BRETT, JJ., concur. ·