Drusilla Stokes MORGAN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–74–24.

Court of Criminal Appeals of Oklahoma.

May 16, 1975.

Don Anderson, Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., M. Joe Crosthwait, Jr., Legal Intern, for appellee.

OPINION

BLISS, Judge:

Appellant, Drusilla Stokes Morgan, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF-73-1200, for the offense of Murder, in violation of 21 O.S.1971, § 701. The jury fixed her punishment at Life Imprisonment, and from this judgment and sentence a timely appeal has been perfected to this Court.

As this case requires reversal, a complete statement of the facts is unnecessary. The evidence adduced at the trial on behalf of the State established a clear case of premeditated murder, by which the defendant brutally shot and killed the deceased, without provocation, while he was attempting to flee to safety and lay helpless and prostrate upon the floor. The defendant, however, interposed self-defense and testified that the deceased was threat-

ening and advancing upon her with a knife, and that she shot in fear for her life not then remembering anything until the encounter had terminated. Further evidence introduced in behalf of the defense established that the deceased was a violent man known to the defendant to carry a knife, and had on previous occasions attacked the defendant with a weapon.

The defendant has assigned as error the failure of the trial court to instruct upon voluntary or first degree manslaughter committed in the heat of passion as a lesser included offense. The essence of defendant's argument is that although the jury did not believe the defendant was justified in killing in self-defense, there was sufficient evidence from which the jury could conclude that the defendant acted from fear amounting to a sudden heat of passion and without malice. Under the weight of authority existing here and elsewhere, we are of the opinion that this contention bears merit requiring reversal. However, we recognize this appeal to present a broader issue deserving clarification. This precise issue is to what extent, if at all, in a prosecution for murder does evidence of self-defense necessitating an instruction thereon, also require an instruction on voluntary or first degree manslaughter committed in the heat of passion as a lesser included offense? Since this appeal was first presented, we have conducted extensive research and analysis for purposes of clarifying the law with regard to this issue.

This category of manslaughter is generally defined to be the unlawful and intentional killing of another without malice but under the influence of a sudden heat of passion caused by adequate provocation.[1] In a prosecution for murder, evidence of self-defense may simply introduce an alternative question as to whether there has been established a particular category or classification of the myriad of factual situations in which voluntary manslaughter might arise, i. e., adequate provocation in the form of personal violence and aggression by the deceased against the accused engendering a sudden heat of passion under the immediate influence of which the accused kills, not in reasonable necessity, but without malice and from fear or anger precluding rational or reasonable thought. In such cases voluntary manslaughter has, indeed, been recognized to occupy a midway position between self-defense and murder.[2]

The essential distinction in a murder prosecution between self-defense, a perfect defense excusing a homicide, and voluntary manslaughter, an imperfect defense reducing the degree thereof, has been variously recognized as follows:

"The dividing line between self-defense and . . . [voluntary] manslaughter seems to be the existence, as the moving force, of a reasonably founded belief of imminent peril to life or great bodily harm, as distinguished from the influence of an uncontrollable fear or terror, conceivable as existing, but not reasonably justified by the immediate circumstances."[3]

"Manslaughter resulting from provocation must not be confounded with homicide in self-defense. In the latter the blow is excused, because necessary to save the life of the person striking it, or to prevent grievous bodily harm; while in manslaughter there is no such necessity, and the blow is only partially excused, because given in the heat of passion."[4]

---

1. See, authorities set forth in footnote 5, infra.

2. See, Brown v. United States, 150 U.S. 93, 14 S.Ct. 37, 37 L.Ed. 1010 (1893).

3. Commonwealth v. Colandro, 231 Pa. 343, 80 A. 571, 574 (1911), and People v. Best, 13 Cal.App.2d 606, 57 P.2d 168, 170 (1936).

4. Miller, Criminal Law, § 92, page 282, quoted with approval in State v. Boyce, 284 Minn. 242, 170 N.W.2d 104, 114 (1969).

Although their elements are not mutually co-extensive, the frequency in which evidence of self-defense requires such an instruction upon voluntary manslaughter becomes apparent upon an examination of the extent to which the elements of the latter are included within the former.[5] Either fear or anger must necessarily exist to some extent in every case of self-defense, and when of a sufficient degree these are recognized as emotional states giving rise to heat of passion. Personal violence and aggression by the deceased sufficient to necessitate an instruction upon self-defense has most generally been recognized as more than adequate legal provocation. In most, if not all, of the relatively few instances to the contrary, either the necessity of an instruction upon self-defense in the first instance seems questionable, or the courts have effectively held apparent provocation insufficient rather than leaving the reasonableness of the defendant's belief for the determination by the jury. The absence of malice aforethought is an element common to both self-defense and voluntary manslaughter. However, while both clearly require that the slayer not have acted with unabandoned felonious or premeditated intent to kill, the slayer may enjoy a greater degree of culpability in the case of voluntary manslaughter where he acts under the influence of passion as opposed to self-defense which requires that he act reasonably upon apparent necessity.

The majority statement of the law is to the effect that evidence requiring an instruction upon self-defense in a murder prosecution does not *necessarily* require, nor preclude, an instruction upon voluntary or first degree manslaughter committed in the heat of passion as a lesser included offense, but where from any evidence the elements of each are established, then an instruction upon both is necessary.[6]. However, this approach has left the trial court in doubt as to when to instruct thereon, and has required appellate courts to engage in the fact-finding process. This situation has produced widely varied results within even the same jurisdiction,[7] and the application of this principle in the various jurisdictions can only be reconciled by observing that within the peculiarities of their own law the courts have recognized a different quantum of proof that motivation was heat of passion as a prerequisite to such a charge. This variance in the application of that principle has also persisted within our own jurisdiction. In the following cases such an instruction upon voluntary manslaughter was held to be unnecessary or improper: Myers v. State, Okl. Cr., 480 P.2d 950 (1969); Harrison v. State, Okl.Cr., 461 P.2d 1007 (1969); Fleming v. State, Okl.Cr., 401 P.2d 997 (1965); Smith v. State, 77 Okl.Cr. 142, 140 P.2d 237 (1943); Oglesby v. State, 56 Okl.Cr. 286, 38 P.2d 32 (1934); and Carle v. State, 34 Okl.Cr. 24, 244 P. 833 (1926); while in the following such a charge was held to be necessary or proper: Shirey v. State, Okl.Cr., 520 P.2d 701 (1974); Williams v. State, Okl.Cr., 513 P.2d 335 (1973); McFay v. State, Okl.Cr., 508 P.2d 273 (1973); Wood v. State, Okl.Cr., 486 P. 2d 750 (1971); Smith v. State, 59 Okl.Cr. 111, 56 P.2d 923 (1936); Young v. State, 33 Okl.Cr. 255, 243 P. 763 (1926); Sherman v. State, 20 Okl.Cr. 306, 202 P. 521 (1921); and Lawson v. Territory, 8 Okl. 1, 56 P. 698 (1899).

5. Together with case authority collected therein, see: 40 Am.Jur.2d Homicide, § 56, et seq.; 40 C.J.S. Homicide § 40 et seq. P. 901; 1 Warren on Homicide, § 83 et seq. (Perm.Ed.1938); 1 Wharton's Criminal Law and Procedure, § 274, et seq. (1957); Annot., 5 L.R.A. (N.S.) 809.

6. Annot., 21 A.L.R. 603, 613, supplemented at 27 A.L.R. 1097 and 102 A.L.R. 1019; 40 Am. Jur.2d Homicide, § 525, pages 780–781, and § 530, page 787; C.J.S. Homicide, Vol. 40, § 42, pages 903–904, and Vol. 41, § 337a, page 95 and § 395, pages 218–219; 4 Warren on Homicide, § 346, pages 427, 447–450 and 453–454 (Perm.Ed.1938).

7. E. g. compare Jennings v. State, 60 Tex. Cr.R. 421, 132 S.W. 473 (1910) and Pickens v. State, 86 Tex.Cr.R. 657, 218 S.W. 755 (1920).

■ Recognizing that fear or anger must exist to some degree in every murder prosecution wherein an instruction upon self-defense is necessary, we are of the opinion that the better practice would be to fully instruct upon voluntary manslaughter in every such case, and thereby leave for the jury under appropriate law the sufficiency of the evidence to establish this lesser degree of homicide. Despite continued adherence to the above statement of the law, this is the result generally reached in the vast majority of more recent decisions from other jurisdictions after applying the any-evidence test and resolving any doubt in favor of the defendant. In so reasoning, we are fully cognizant that an instruction should not be given upon a lesser included offense not supported by the evidence, but find that the elements of voluntary manslaughter are present in such cases to some extent, however slight, and that the previous approach has left doubt and thrust the courts into a fact-finding process more properly reserved for the jury. In such cases, the impropriety of the trial court taking this question from the jury was recognized in Stevenson v. United States, 162 U.S. 313, 16 S.Ct. 839, 40 L. Ed. 980 (1896), wherein the Court reasoned in part:

> ". . . The evidence as to manslaughter need not be uncontradicted or in any way conclusive upon the question; so long as there is some evidence upon the subject, the proper weight to be given it is for the jury to determine. If there were any evidence which tended to show such a state of facts as might bring the crime within the grade of manslaughter, it then became a proper question for the jury to say whether the evidence were true and whether it showed that the crime was manslaughter instead of murder. . . . The evidence might appear to the court to be simply overwhelming to show that the killing was in fact murder, and not manslaughter or an act performed in self defence, and yet, so long as there was some evidence relevant to the issue of manslaughter, the credibility and force of such evidence must be for the jury, and cannot be matter of law for the decision of the court. (162 U.S. 314–315, 16 S.Ct. 839.)

> \* \* \* \* \* \*

> "It is objected that while the evidence . . . was proper to be submitted to the jury upon the issue of self defence, it was not of that character to even raise an issue as to the grade of the crime, if the theory of self defence were not sustained. We do not see the force of the objection. The fact that the evidence might raise an issue as to whether any crime at all was committed is not in the least inconsistent with a claim that it also raised an issue as to whether or not the plaintiff in error was guilty of manslaughter instead of murder. It might be argued to the jury, under both aspects, as an act of self defence and also as one resulting from a sudden passion and without malice. . . .

> ". . . [The passion] might be one of anger or it might be terror. If either existed to a sufficient extent to render the mind of a person of ordinary temper incapable of cool reflection, it might be plausibly claimed that the act which followed such an assault was not accompanied by the malice necessary to constitute the killing murder. Whether such a state of mind existed in this case, and whether the plaintiff in error fired the shot under the influence of passion and without malice, cannot be properly regarded as a question of law." (162 U.S. 322–323, 16 S.Ct. 842)

Also, in Kinard v. United States, 68 U.S. App.D.C. 250, 96 F.2d 522 (1938), the Court applied *Stevenson,* supra, in holding that:

> "The only situation, then, in which an instruction taking the issue of manslaughter from the jury is proper, is one in which, as ruled in the Stevenson Case, there is no 'evidence relevant to the is-

sue of manslaughter' or no 'evidence fairly tending to bear upon the issue of manslaughter.'

\* \* \* \* \* \*

"The Government contends . . . that the facts in the present case are susceptible of but two possible interpretations: One, that the appellant was not guilty because he acted in self-defense; the other, that he was guilty of murder in the first or second degree, hence, that a killing upon provocation in a heat of passion is necessarily inconsistent with the facts. . . . The two . . . are not mutually exclusive and inconsistent. . . . Provocation sufficient to produce a heat of passion and a resulting absence of malice may give such character to a homicide as to make it manslaughter; the same provocation may, under slightly varied circumstances, justify a person in killing in self-defense. . . . Heat of passion may be produced by fear as well as by rage . . . and, if the provocation therefor is adequate . . . the resulting killing may be manslaughter. The essence of the self-defense situation is a reasonable and bona fide belief of the imminence of death or great bodily harm. . . . Heat of passion may or may not be present. It is the function of the jury, under proper instructions, to determine whether either defense is available to the accused under the circumstances of the particular case." [Citations omitted]

Additional authority for this view may be found in the case authority from the State of New Mexico. The leading case in that jurisdiction, State v. Kidd, 24 N.M. 572, 175 P. 772 (1886), was again re-examined in State v. Simpson, 39 N.M. 271, 46 P.2d 49 (1935), wherein the court upheld the submission of voluntary manslaughter and stated:

"The appellant . . . claimed to have fired in self-defense. He testified that the deceased was advancing upon him with a drawn knife, and that he (appellant) 'shot to protect himself from the knife,' and only after warning the deceased to cease his attack.

"Thus was put into the case the theory that appellant acted in fear or terror of being killed or done great bodily harm. . . .

\* \* \* \* \* \*

"The verdict . . . represents the conclusion that the provocation for terror was not sufficient to justify the killing, but was sufficient to raise a reasonable doubt that appellant slew in malice.

"The leading case expounding the doctrine in this jurisdiction is State v. Kidd, . . . .. In that case there was mention of a special provocation for terror, additional to the mere physical circumstances. We do not understand, however, that the doctrine exhausted itself on the facts of that case. It has been applied in cases where there was no such special provocation. Cf. State v. Diaz, 36 N.M. 284, 13 P.2d 883. State v. Davis, 36 N.M. 308, 14 P.2d 267.

"This court, in accepting this doctrine as to provocation for heat of passion, did not fail to appreciate that many close questions would be presented. We said: 'The line of demarcation between a homicide which amounts to voluntary manslaughter and one which amounts to justifiable homicide in self-defense, is not always clearly defined and depends upon the facts of each case as it arises. Those facts are for the jury, under instructions from the court, laying down the principles of law governing the same, as was done in this case.'

"So long as the doctrine of State v. Kidd persists, it will be generally true that evidence requiring submission of self-defense will call for a submission of voluntary manslaughter. We have one instance to the contrary. State v. Luttrell, 28 N.M. 393, 212 P. 739. There the defendant, though claiming that he was in a situation of peril which justified the slaying, persisted in saying that he was

'calm and cool' at the time, being 'by nature so disposed.' Luttrell having assigned error upon a failure to submit voluntary manslaughter, this court in effect said that the trial court did not err in taking him at his word. It does not follow that it would have been error to refuse to take him at his word and to have submitted voluntary manslaughter over his objection.

\* \* \* \* \* \*

"That decision was well considered. It plants itself upon reason and authority. . . . It has been followed in a number of important cases. We see no good reason for, and many against, reopening the question."

In State v. Lopez, 79 N.M. 282, 442 P.2d 594 (1968), that court held, "[I]t is quite apparent that when facts are present which give rise to a plea of self-defense, it is not unreasonable that if the plea fails, the accused should be found guilty of voluntary manslaughter." Also, in State v. Plummer, 44 N.M. 614, 107 P.2d 319 (1940), that court stated:

"Ever since the case of State v. Kidd, [supra], this court has in substance held that ordinarily evidence requiring a submission to the jury of an accused's plea of self-defense will call for a submission of voluntary manslaughter. According to the Kidd case, all that is required to reduce a homicide from murder to voluntary manslaughter is sufficient provocation to excite in the mind of the defendant such emotions as either anger, rage, sudden resentment, or terror as may be sufficient to obscure the reason of an ordinary man, and to prevent deliberation and premeditation, to exclude malice, and to render the defendant incapable of cool reflection."

Despite the use of the terms "generally" and "ordinarily," that court has consistently held that in a prosecution for murder wherein self-defense is interposed, an instruction upon voluntary manslaughter is also necessary or proper.[8] The only other exception noted was subsequently rejected in State v. Inman, 41 N.M. 424, 70 P.2d 152 (1937), wherein the defendant shot the deceased in the alleged belief that he was going to his automobile to get a gun three weeks after a quarrel wherein the deceased had threatened the defendant. The court there reasoned as follows:

"The question to be determined is whether or not the facts bring the case within the rule to the effect that the defendant was in such 'terror' that it constituted 'heat of passion' as defined in State v. Kidd, [supra] and followed in other cases, the last being State v. Simpson, [supra]. The defendant relies upon State v. Hunt, 30 N.M. 273, 231 P. 703, maintaining that the facts in the case at bar are similar to those in the Hunt Case, where we held that 'It is error, requiring reversal, to submit \* \* \* a degree of unlawful homicide not within the proofs, and over the objection of the defendant.'

"It is also pointed out that under all the authorities three weeks is a sufficient 'cooling time' and that the evidence supports the theory that the defendant at the time of the homicide displayed the utmost coolness and deliberation. It is true that no time was wasted after the defendant arrived at the scene of the homicide, but he testified that he shot to save his own life. . . . This plea of self-defense was based upon the immediate danger.

". . . [T]he rule in the Simpson Case is controlling in the case at bar.

---

8. Also see, State v. Harrison, 81 N.M. 623, 471 P.2d 193 (1970); State v. Ulibarri, 67 N.M. 336, 355 P.2d 275 (1960); State v. Alaniz, 55 N.M. 312, 232 P.2d 982 (1951); State v. Vargas, 42 N.M. 1, 74 P.2d 62 (1937); State v. Martinez, 39 N.M. 290, 46 P.2d 657 (1935); State v. Layman, 39 N.M. 127, 42 P.2d 201 (1935); State v. Wright, 38 N.M. 427, 34 P.2d 870 (1934); State v. Greenlee, 33 N.M. 449, 269 P. 331 (1928), and State v. Crosby, 26 N.M. 318, 191 P. 1079 (1920).

The defendant's able counsel strenuously argue that the Hunt Case, as well as the weight of authority in other jurisdictions, is contrary to this rule. The rule was adopted after thorough consideration and we see no reason to depart from it now. . . ."

 We, therefore, further hold, that in every future prosecution for murder, wherein the evidence necessitates an instruction upon self-defense, the trial court shall also instruct upon voluntary or first degree manslaughter committed in the heat of passion as a lesser included offense. This instruction need not be requested and should be given irrespective of an objection thereto. The only exception to this rule should be in the case of uncontroverted proof from which the law presumes malice, e. g., homicide perpetrated in the commission of a felony. Together with such other instructions as the circumstances of the case may require, instructions in substantial compliance with those set forth in the Appendix hereto, should be submitted to the jury.

For the above and foregoing reasons, the judgment and sentence appealed from is, accordingly, reversed and remanded with instructions.

BUSSEY, J., concurs.

BRETT, P. J., concurs in results.

## APPENDIX

### INSTRUCTION I:

You are further instructed that under the facts of this case, the crime of murder, as heretofore defined in these instructions, embraces the lesser degree of felonious homicide known as first degree manslaughter. In such cases the statutes of this State define homicide as manslaughter in the first degree when perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitutes excusable or justifiable homicide. This category of homicide is also known under the law as voluntary manslaughter, and otherwise defined as the unlawful and intentional killing of another under the influence of a sudden heat of passion caused by adequate provocation, and without malice.

### INSTRUCTION II:

The term "heat of passion," as used within these instructions, may consist of either anger, rage, resentment, fear or terror. In order to reduce a homicide to first degree manslaughter, this passion must have existed to such a degree as would naturally destroy the sway of reason and render the mind incapable of cool reflection, and thus exclude malice aforethought. Otherwise stated, this emotional state must have been so violent as to overcome or suspend the exercise of judgment and self control, and thereby so obscure reason and dominate volition as to exclude premeditation and a previously formed design to kill. However, the passion need not have been such as would entirely dethrone reason, or be so overpowering as to destroy knowledge and volition. This emotional state must, however, have actually dominated the defendant at the time of the homicidal act and must have been entertained toward the person slain and not toward another.

### INSTRUCTION III:

The term "adequate provocation," as used within these instructions, may consist of any improper conduct of the deceased toward the defendant which naturally or reasonably had the effect of engendering a sudden heat of passion within the defendant. Generally, those actions which are in themselves calculated to provoke an emotional state from which serious violence ordinarily follows are recognized as adequate or sufficient provocation, as compared with those that are slight and trivial from which a great deal of violence does not usually result. In determining whether the provocation was sufficient or reasonable, ordinary human nature, or the

average of men recognized as men of fair average mind and disposition, should be taken as the standard, unless the defendant was shown to have some peculiar weakness of mind or infirmity of temper which did not arise from wickedness of heart or cruelty of disposition. Mere words, threats, menaces or gestures, however offensive or insulting, do not reduce a homicide from murder to first degree manslaughter, but may be considered in connection with any other improper conduct of the deceased. Personal violence or aggression by the deceased of a nature sufficiently violent to cause or threaten to cause pain, bloodshed, or bodily harm to the defendant may be sufficient provocation. Both adequate provocation and sufficient heat of passion caused thereby must co-exist to reduce a homicide to first degree manslaughter.

## INSTRUCTION IV:

The absence of "malice," as that term is used within these instructions, is essential for the homicide to constitute first degree manslaughter, and requires that the defendant not have killed with a previously formed or deliberate purpose in premeditation. Malice and heat of passion cannot co-exist. The distinction between murder and voluntary manslaughter is found in the dividing line between malicious action on the one hand and action in the heat of passion on the other. In determining whether the act which caused death was impelled by heat of passion or by malice, all the surrounding circumstances and conditions are to be taken into consideration, including previous relations and conditions connected with the tragedy as well as those existing at the time of the killing. As in other respects, the absence of malice requires that the defendant must not have intentionally contributed to the provocation so as to have an opportunity to kill the deceased, the provocation must have been the cause of the passion, the provocation must have been proportionate to the manner in which the defendant retaliated, and there must not have been sufficient time for the engendered passion to have cooled or subsided.

BRETT, Presiding Judge (Concurs in results).

I concur that the failure of the trial judge to instruct the jury upon the lesser included offense of Manslaughter in the First Degree requires, under the facts of this particular case, the reversal of this conviction. I cannot, however, concur in the establishment of an inflexible rule whereby, even over a defense objection, "in every future prosecution for murder wherein the evidence necessitates an instruction upon self-defense, the trial court shall also instruct upon voluntary or first degree manslaughter committed in the heat of passion as a lesser included offense."

The majority opinion reasons that the absence of a fixed rule often leaves the trial court in doubt and requires the appellate court to engage in a fact finding process. It is clear to me that there can be no application of any principle of law without first examining the facts of the particular case to which that principle is to be applied, and the outcome of each individual case must necessarily vary with its particular facts.

In most American jurisdictions voluntary manslaughter is characterized by an intent to kill, or an intent to do serious bodily injury; however, when that intent is formed as the result of a reasonable passion it is held that the circumstances may reduce the homicide to manslaughter. See, LaFave and Scott, Criminal Law 572 (1972). In such jurisdiction the rule announced by the majority of this Court, which is based upon the recognition that "fear or anger must exist to some degree in every murder prosecution wherein an instruction upon self-defense is necessary," might be less inappropriate than it is when applied to the law of this State. The Oklahoma view of manslaughter committed in the heat of passion is a minority one. It is not enough

under the law of Oklahoma that it be shown that the intent to kill was formed as the result of a reasonable passion, the passion must be so great as to destroy any intent to kill and indeed render the mind incapable of forming an intent. Thus, § 711(2) of Title 21 of the Oklahoma Statutes, defining manslaughter in the first degree states, "When perpetrated *without a design to effect death,* and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; . . .." (Emphasis added) Section 704 of Title 21 states, "Homicide committed with a design to effect death is not the less murder because the perpetrator *was in a state of anger* or voluntary intoxication at the time." (Emphasis added) See, Updike v. State, 9 Okl.Cr. 124, 130 P. 1107. Under our statutes, if all the evidence is clear that the defendant did form an intent to kill or a "design to effect death," prior to the commission of the fatal act, the giving of a manslaughter instruction would be wholly in conflict with such evidence even though the defendant was angry or in fear when he acted. In such a case the manslaughter instruction should not be given, certainly not over the objection of the defendant.

While I agree that the ordinary case will indeed fit within the rule announced by today's decision, I believe that those extraordinary fact situations which will not fit within the rule should not be decided until such time as they come before us. I recognize that the rule announced in today's decision has in its favor extreme ease of application. I cannot, however, concur in its adoption because I believe it to be an incorrect interpretation of the law and contrary to the very basic concept that each case is to be determined upon its own facts.

Further, I feel constrained to point out that the majority decision offers its attached instructions as general examples and not as models to be followed in every particular. Our statutory scheme defining

the law of homicide does not employ the term "malice" as do the suggested instructions. Since the legal definition of "malice" differs from lay usage of the word, it is unfortunate to introduce it to the jury when the statutes at issue in no way require that it be used. Suggested instruction number one, it should be noted, informs the jury that manslaughter in the first degree must be "without a design to effect death," but may be "intentional" as long as it is "without malice." The approval of such an instruction, in my opinion, creates the possibility of extreme confusion both in the mind of the jury and in the law of homicide.