Roy Lee **LEWIS**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–75–116.

Court of Criminal Appeals of Oklahoma.

Sept. 23, 1975.

Rehearing Denied Oct. 9, 1975.

Carroll Samara, and Lawrence H. Mc-Millin, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Jahn D. Rohrer, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

Appellant, Roy Lee Lewis, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF-74-886, for the offense of Murder, Second Degree, in violation of 21 O.S.Supp.1974, § 701.2. His punishment was fixed by jury at a term of ten (10) years to Life imprisonment and from said judgment and sentence a timely appeal has been perfected to this Court.

Homer Whatley testified for the State and stated that on the 7th day of March, 1974, he was at the Cavalier Club with Adron Ralls, the decedent. The witness was called to the telephone and while talking on the telephone he observed the decedent and the defendant arguing. When the witness saw that the two men were not joking, he went over to them and broke up the fight. After separating the two men, one Cora Myrks took the decedent by the hand and tried to persuade him to come to the bar. At this time the defendant, while lying on the floor, took a pistol from his back pocket and shot the unarmed decedent five times. After shooting the decedent the defendant fled through the back door.

Cora Lenora Myrks testified she was employed as a barmaid at the Cavalier Club and was so employed on the evening of March 7, 1974. She said that on that evening she observed Homer Whatley and the decedent enter the club and she then related the following events which occurred on that evening. The defendant and another individual entered the club. The defendant asked for a beer and she asked him to wait a minute. The defendant responded by calling her a "bitch." The decedent then said "no one calls Cora and Terry [her grandson] a bitch." Shortly thereafter she heard a "rumbling." She called to Whatley who was on the telephone to break up the fight between the defendant and decedent. The witness testified that Whatley pulled the decedent away from the defendant, and she then approached the decedent and took him by the hand. While walking with the decedent away from the defendant, she heard shots and observed that the decedent had been wounded. She testified that the fight had ended prior to the defendant shooting the decedent. After the shooting the defendant ran out the door and the witness called an ambulance.

Tom L. Hewett testified he was a physician and that he performed an autopsy in March, 1974, on one Adron Ralls. In his opinion the cause of death was gunshot wounds to the abdomen. The decedent also had a flesh wound to the right leg and abrasions on the left hand and chest.

The State then rested.

The first witness for the defense was James Earl Cole who testified that he resided in Oklahoma City and on March 7, 1974, he was in the Cavalier Club with the defendant. He observed the following events which occurred on that evening. The defendant got into an argument with the barmaid, Cora Myrks. Later, after hearing some noise, he observed the decedent standing over the defendant and he heard the defendant asking that the decedent not hit him. He heard the decedent tell the defendant that if he heard the defendant call the barmaid names again he would "stomp his brains out." Thereafter, he saw a man, Homer Whatley, pull the decedent away from the defendant shortly after which shooting began and he fell to the floor. He did not see the barmaid walk the decedent back to the bar, nor did he see the defendant shoot the decedent. He had seen the decedent approach the defendant again after Homer Whatley had pulled the decedent away.

The defendant then took the stand to testify in his own behalf. He said that he resided in Oklahoma City and that on March 7, 1974, he was in the Cavalier Club with a friend, Tiny Cole. On that evening he conversed with Cora Myrks and he did have an argument with her, but he did not curse her or call her any name. He stated that during the argument he observed the decedent and Homer Whatley enter the club. While drinking his beer, someone struck him from behind with a cue stick and knocked him to the floor. The decedent then told him that he was going to "stomp" his brains out. While the decedent was standing over him with one foot on him and a cue stick in his hand, Homer Whatley pulled the decedent away but the decedent broke loose and came at him again and knocked the defendant's gun to the floor. The decedent "came across" him again and he shot the decedent while getting up from the floor and running out of the club. He testified he ran to a club called Mama's Place and called his aunt to come get him. Later, he called the police who arrested him at his aunt's house. He was advised of his rights and he then related the shooting incident to the police.

Phillip Burris testified that he was in the Cavalier Club in Oklahoma City on March 7, 1974, at which time he observed an intoxicated man attack the defendant with a cue stick. At no time did he hear the defendant say anything to provoke the attack. He further testified that while the defendant was on the floor a man tried to pull the decedent away, but the decedent broke loose and came at the defendant again. He further stated that thereafter Cora Myrks tried to pull the decedent away, but he would not go with her. Suddenly, shooting began and the defendant ran out of the club. The witness ran to the back door of the club.

Walter Preston testified he was employed with the Sanitation Department in Oklahoma City and that he knew the defendant as the defendant had worked under him. He testified the defendant had a good reputation for being a truthful person.

The defense then rested.

The defendant's first assignment of error asserts that the trial court erred in failing to instruct the jury, without request of the defendant, on the lesser included offense of manslaughter in the first degree. In reviewing the testimony in this case, it evidently appears that the defendant relied upon the theory of self-defense, but the jury failed to believe him.[1]

■ Had the jury believed the defendant's theory, justifiable homicide would have been the conclusion and thus the jury would have acquitted the defendant. Furthermore, defense counsel wanted it presented to the jury as it was, as the defense offered no written instructions on any lesser included offense, and, further, the defense affirmatively agreed with the court that the evidence in the case did not warrant an instruction on any lesser included offense.[2] As this Court has repeat-

---

1. The defendant's theory of self-defense is affirmatively reflected in the record, wherein on cross-examination he stated:

"Q. But here is Homer standing there where you can touch him, right at your shoulder? But you are scared for your life to the extent you shoot a man five times, four times, or whatever, and killed him?
"A. You do—a 200-pound man hollering he would whip you, what would you do?
"Q. I wouldn't have done what you did.
"A. What would you do?
"Q. I would have turned around and I would have ran. I wouldn't have taken a man's life, that is what you are on trial here for.
"You took a man's life, didn't you?
"A. *To keep my own self for living.*" (Tr. 96–97, emphasis added)

2. This is supported by the record wherein it states at pages 120 and 121 of the trial transcript as follows:

"THE COURT: . . . I studied the man slaughter (sic) statute. I don't see there is any lesser included offense involved in the facts of this case.
"Mr. Samara, what do you have to say about that?

edly held, we do not condone actions of defense counsel "lying behind a log" not objecting or offering any instructions and then raising it for the first time on appeal. See, *Myers v. State*, Okl.Cr., 480 P.2d 950 (1970). Therefore, the defendant cannot now be heard to complain of results which he was instrumental in causing.

■ Defense further argues in support of this assignment of error that in light of this Court's recent decision in *Morgan v. State*, Okl.Cr., 536 P.2d 952 (1975), where an instruction on self-defense is required, the trial court shall also instruct on voluntary or first degree manslaughter. We need only reiterate our language in *Morgan*, supra, "that in every future prosecution for murder, wherein the evidence necessitates an instruction upon self-defense, the trial court shall also instruct upon voluntary or first degree manslaughter committed in the heat of passion as a lesser included offense." Thus, *Morgan* is prospective in application only and we need only note that the defendant in the instant case was tried and convicted of the crime of murder prior to our decision in *Morgan*, supra. Therefore, the rule as enunciated in *Morgan*, supra, is not applicable in the instant case.

For the reasons herein stated, we find the defendant's first assignment of error to be without merit.

■ The defendant's second assignment of error asserts the verdict was contrary to the evidence. The defendant argues this assignment of error is premised on his first assignment of error and additionally premised on the allegation that the

jury should have been instructed on two points, and absence of said instructions undoubtedly induced error on their part. He asserts the jury should have been instructed that: (1) inflammatory remarks or insulting words do not justify assault; and, (2) even though the defendant might have been armed with a pistol unlawfully, this fact did not deprive him of the right to use it in necessary self-defense. We need only note that the defendant failed to submit any written instructions regarding these points and as such may not for the first time raise them on appeal. See, *Myers*, supra. We further note the general rule as enunciated in *Robertson v. State*, 52 Okl. Cr. 368, 5 P.2d 185 (1931), in the Syllabus by the Court states:

"Instructions must be considered as a whole, and, when considered together, if they fairly and correctly state the law applicable to the case, they will be sufficient."

In the instant case we have carefully reviewed the case in conjunction with all the instructions given by the trial court and believe they fairly and fully present the issues involved in the instant case. In light of our disposition of the defendant's first assignment of error and for the reasons herein stated, we, therefore, find the defendant's second assignment of error to be without merit.

In conclusion we observe the record is free of any error which would justify modification or reversal. Judgment and sentence is, accordingly, *affirmed*.

BRETT, P. J., and BUSSEY, J., concur.

"MR. SAMARA: I am inclined to agree with the Court.
"THE COURT: Do you agree?
"MR. SAMARA: Yes, sir.
"THE COURT: Do you wish any other instruction in connection with this case besides murder two or not guilty?

"MR. SAMARA: Just the one on reputation.
"THE COURT: I will have that. But I am talking about question of whether or not there is any lesser included offenses.
"MR. SAMARA: No, not asking for any other instructions."